**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT CINCINNATI**

| | | |
|---|---|---|
| **EDWARD SMITH,** | : | |
| **Petitioner,** | : | **CASE NO.  C-1-01-814** |
| **v.** | : | **JUDGE SUSAN J. DLOTT** |
| **ANTHONY BRIGANO,** | : | **MAGISTRATE PERELMAN (CLEVELAND)** |
| **Respondent.** | : | |

**RESPONDENT'S SUPPLEMENTAL ANSWER**

Now comes the Respondent, by and through Counsel, and respectfully files this supplemental answer to the petition in this case pursuant to the order of this court dated January 23, 2004.  Respondent relies upon the history of this case as presented in the Return of Writ. Respondent submits that the claims presented by Petitioner in his Grounds for Relief Seven through Ten are lacking in merit for the reasons set forth herein.

Respectfully submitted,

JIM PETRO
Attorney General

s\Thelma Thomas Price
THELMA THOMAS PRICE (0033976)
Assistant Attorney General
Corrections Litigation Section
150 East Gay Street, 16th Fl.
Columbus, Ohio 43215-6001
(614) 644-7233
(614) 728-9327-Fax
e-mail: tprice@ag.state.oh.us

## STATEMENT OF FACTS

For the convenience of the court, Respondent will present the facts pertinent to Petitioner's claim in this supplemental answer; these facts were determined by the Hamilton County Court of Appeals in Smith's second direct appeal.  These binding factual findings "shall be presumed to be correct", and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998) *cert. denied*, 119 S.Ct. 2403 (1999).

Eugene Jenkins was found murdered in his truck on the morning of December 27, 1996, in Lincoln Heights, Ohio.  Earlier that morning, he had been seen driving in his truck with a passenger who had a beard and wore glasses and a cap. The witness who saw the truck stated that Jenkins and his passenger appeared to be arguing.  Jenkins's son also testified at trial that he saw Smith sitting in his own truck outside of his father's barber shop on the morning of the murder.

Michelle Thomas was walking to a friend's house in Lincoln Heights that morning. She saw a man come around the corner of a nearby building.  He looked anxious as he ran past her.  She stated that she got a good look at his face, describing him as over forty years old, with a full beard that was black mixed with gray, and wearing glasses and a cap. After she rounded the corner, she saw Jenkins's truck parked on the street with someone in the vehicle.  She and her friend called the police a short time later about the person in the truck.  An officer arrived at the scene and discovered Jenkins.  He was dead from two gunshots fired at close range.  The officer called for an ambulance and for other assistance.

There were no indications of a struggle in the truck. The police examined the passenger door and dashboard for fingerprints, but could not find any usable prints. Underneath the victim was a set of keys.  The police later found that one of the keys fit the ignition of a truck owned by Smith.  Outside of the truck, on the ground on the passenger side, the police found a small cassette tape.  Smith's voice was on the tape, but Jenkins's was not.

The record is not entirely clear on this point, but those who knew Jenkins suspected that Smith was responsible for his death, apparently because he had argued with Jenkins a few months earlier over payment

for masonry work that Smith had performed on Jenkins's property. A relative of Jenkins's, who was also an FBI agent, offered to help the police in the investigation. He went to the house of one of Smith's employees, James Spikner, and asked Spikner to help him find Smith. The two went to Smith's house, but his wife stated that he was not there.

Spikner then led the agent to a storage facility where Smith kept tools for his construction business. Spikner began to enter the facility to see if Smith's tools were gone, which would have indicated whether he was working on a site somewhere. As he lifted the door to the unit, he saw that a truck had been parked in the facility, which was unusual. He recognized it as Smith's truck. When he had opened the door and entered the unit, he saw that Smith had been lying on the front seat of the truck. Spikner spoke to Smith briefly, but Spikner and the agent left the facility without Smith. At trial, Spikner testified that Smith frequently carried a small tape recorder with him to record conversations about his business transactions.

The police put together a photographic lineup that included Smith, whom they suspected of being involved in the murder, and others. They showed the lineup to Thomas, who identified Smith as the person she had seen running past her. Smith was later apprehended at an automobile pawn lot. He had frequently pawned automobiles there when he was low on cash in his construction business. On this occasion, he had attempted to sell two vehicles to the owner of the business, stating that he intended to leave town.

(Exhibit 23, pp.2-4, *State v. Smith* (Nov. 3, 2000), Hamilton App. No. C-990689,

unreported, 2000 Ohio App. LEXIS 5082.)

## ARGUMENT IV

## SMITH CANNOT DEMONSTRATE THAT HIS APPELLATE COUNSEL WAS INEFFECTIVE UNDER THE STANDARD OF *STRICKLAND V. WASHINGTON*.

### A. General Standard of Review in Habeas Corpus:

Ordinarily, for a petitioner who files a federal habeas corpus petition after 1996,

the Antiterrorism and Effective Death Penalty Act ("AEDPA") sets the standard for

federal habeas review under 28 U.S.C. § 2254. The AEDPA amended the standard of

review set forth in 28 U.S.C. § 2254(d) to provide:

An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of the state court shall not be granted with respect to **any claim that was adjudicated on the merits in State court proceedings** unless the adjudication of the claim

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  [Emphasis added.]

In this case, however, the state court of appeals did not review the remaining claims presented by Petitioner on the merits; the state court held that the claims were defaulted due to Smith's failure to timely file his application to reopen his appeal.  For this reason, the AEDPA standard of review may not be applied to Grounds Seven through Ten of Smith's petition.

In *Maples v. Stegall*, 340 F.3d 433 (6th Cir. 2003), the Sixth Circuit Court of Appeals held that the petitioner had demonstrated cause for his failure to file a timely state court action because he had delivered his appeal documents to the prison mail system five days prior to the last date for filing in the state court.  In this case, Petitioner Smith delivered his application to reopen to the prison mail system on January 30, 2001 in an attempt to satisfy a filing deadline of February 1, 2001, that is he attempted to mail the notice of appeal three days before it was due.  This court has found that Smith may have satisfied the "cause" requirement to excuse a state procedural default (as argued by Respondent in the Return of Writ).   In *Maples*, the Sixth Circuit found that prejudice also existed because the failure of the prison mail room to timely mail the documents resulted in that petitioner's inability to present his substantive claim to any other state court.  The *Maples* court then held that a federal habeas corpus court could review the

petitioner's claims on the merits, citing *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

In *Edwards v. Carpenter*, the United States Supreme Court recognized that a federal

court should assess the merits of a state habeas petitioner's procedurally defaulted

claim when the petitioner has demonstrated cause and prejudice to excuse the default.[1]

Smith's claims of Ineffective Assistance of Appellate Counsel, Ground Ten, for

failing to assert three claims of Trial Court error, Grounds Seven, Eight and Nine, must

be denied on the merits, however, for the reasons discussed below.

In *Williams v. Taylor*, 529 U.S. 362 (2000), the United States Supreme Court held

that a claim of ineffective assistance of counsel is still governed by *Strickland v.*

*Washington*, 446 U.S. 668 (1984).   Prior to the adoption of the AEDPA, federal courts

on habeas corpus review were admonished to show deference to the findings of fact of

state courts.  State court findings of fact, including summaries by the court, are entitled

---

[1]    The Maples Court said specifically that:

> The prejudice resulting from the procedural default is that the
> Michigan Supreme Court refused to consider Maples's claim of ineffective
> assistance of counsel. Moreover, as the state admits, Maples "no longer
> has any procedure available to present his claim to the Michigan Supreme
> Court." The state does not contest that the procedural default prejudiced
> Maples. We thus will turn to the merits of Maples's claim. See, e.g.,
> *Edwards v. Carpenter,* 529 U.S. 446, 451, 146 L. Ed. 2d 518, 120 S. Ct.
> 1587 (2000) (recognizing that a federal court should assess the merits of a
> state habeas petitioner's procedurally defaulted claim when the petitioner
> has demonstrated cause and prejudice that excuses the default).

In *Murray v. Carrier*, 477 U.S. 478 (1986), the United States Supreme Court said that
demonstrating "cause" requires showing that an objective factor external to the defense
impeded petitioner's or counsel's efforts to comply with the State procedural rule.
*Murray, supra,* at 488.   The court later said that demonstrating "prejudice" requires
showing a disadvantage "infecting" the trial with constitutional error.  *United States v.*
*Frady,* 456 U.S.152, 168 (1982). [Emphasis added.]  Under *Maples,* involving a default
at the appellate level, the petitioner is obliged to demonstrate that he can no longer
obtain review of the claims asserted in the appeal.

to a presumption of correctness in a federal habeas corpus proceeding. 28 U.S.C. Section 2254(d); *Marshall v. Lonberger*, 459 U.S. 422, 435 (1983); *Sumner v. Mata*, 449 U.S. 539 (1981), *reaffirmed*, 455 U.S. 591 (1982). Also, it is the obligation of the federal courts to accept as valid a state court's interpretation under state law of the statutes and rules of practice of that state. *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986). Therefore, this court in its review must defer to relevant state court findings of fact and state court interpretations of Ohio law.

**B.  Standard of Review for Ineffective Assistance of Trial/Appellate Counsel:**

The test for effective trial counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984). First, counsel's performance must be deficient; second, the petitioner must show that the deficient performance prejudiced the defense to the extent that "the trial cannot be relied on as having produced a just result." 466 U.S. at 687-688. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Because petitioner must satisfy both prongs of the *Strickland test to* demonstrate ineffective assistance of counsel, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other. *Id.* at 697.

The Sixth Amendment to the United States Constitution guarantees the right of an accused to the effective assistance of counsel in a criminal action.  This extends to a first appeal as of right.  *Evitts v. Lucey*, 469 U.S. 387 (1985); *Douglas v. California*, 373 U.S. 905 (1963).  The test for effectiveness of appellate counsel corresponds to the two-part test set forth in *Strickland v. Washington*, *supra*, that is, to establish ineffective assistance of counsel on appeal, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  In this case, Smith must demonstrate that he would have been successful on appeal had his remaining claims been considered.

**C.  Smith's Appellate Counsel was not ineffective for failing to argue that the trial court abused its discretion in allowing the testimony of certain witnesses, specifically Randall Rozier, the FBI agent.**

In his application to reopen his appeal Smith argued that his appellate counsel should have raised as error that the trial court erred when it permitted Randall Rozier, the first cousin of the victim who was an FBI agent by profession and in town visiting, to testify because he (1) engaged in an illegal search and seizure, (2) testified that Smith had a "wild" look on this face when he and witness Spikner located him in the company garage and (3) testified that Smith had a gun when he and witness Spikner found him. (ROW, Exhibit 27, p. 1.)  Smith bases his claim on his assertion that Rozier's testimony was subject to suppression under the Fourth Amendment to the United States Constitution.  Smith does not assert that his trial counsel made this claim first in a motion to suppress prior to his second trial.  He merely argues that his appellate counsel, who was new counsel, should have argued on appeal that suppression was appropriate.

The record of the trial proceedings do not reflect that Smith's trial counsel filed a motion to suppress Rozier's testimony.  (See Exhibit 40, Docket Sheet of the Court of Common Pleas, p. 5 of 9.)  Clearly then, Smith may not argue that his appellate counsel was ineffective for failing to argue that a motion to suppress should have been granted by the trial court since the trial court was not asked to grant such a motion.  Smith falls back upon an argument then that appellate counsel should have argued that the trial court's failure constituted plain error.   In either scenario Smith would not have prevailed upon such a claim.  The claim lacks merit for the reasons discussed further; therefore Smith's appellate counsel cannot be found deficient for failing to raise a claim that was clearly non-meritorious.

The testimony at trial revealed that Randall Rozier, despite his FBI connection, was not acting under the authority of the State or any of its local jurisdictions.  Rozier testified that he did not have the permission of the local Lincoln Heights Sheriff to participate in the Cincinnati investigation and that he did not have the permission of his FBI superiors to get involved in the investigation, which last is a protocol requirement. (Exhibit 39, Trial Tr. Vol. I, pp. 461-465.)  Smith himself acknowledges that a violation of the Fourth Amendment's prohibition against illegal searches and seizures is applicable only to the State, that is persons acting on behalf of the State.  (ROW, Exhibit 27, p. 2.) See *Burdeau v. McDowell*, 256 U.S. 465 (1921) (courts have regularly declined to exclude evidence when it is obtained by private persons); see also *Coolidge v. New Hampshire*, 403 U.S. 443 (1971) (the test of government participation is whether, under all of the circumstances, the private individual must be regarded as an agent or instrument of the State).  The trial court thus had no basis upon which to exclude

Rozier's testimony; none of the complained of testimony was inadmissible under Smith's illegal search and seizure argument. Smith's appellate counsel cannot be found deficient for failing to raise this factually contradicted claim. For this reason, presenting this factually contradicted claim would not have changed the outcome of his appeal; his conviction would have been affirmed with or without this claim. Consequently, Smith cannot demonstrate either a deficient performance or prejudice for his appellate counsel's failure to present this claim on appeal.

**D. Smith's Appellate Counsel was not ineffective for failing to argue that the trial court abused its discretion in denying his motion for a new trial after his second trial was complete.**

In his Ground Eight, Smith argues that his appellate counsel should have pursued the claim he presented in his motion for new trial, that is that he and his attorney had developed irreconcilable differences and counsel should have been permitted to withdraw. (ROW, Exhibit 17.) Smith apparently believes that his appellate counsel did not present an argument to the Court of Appeals that challenged his conviction on the basis of his deteriorating relationship with his trial counsel. Smith's appellate counsel did however make an argument based upon this premise.

In his appeal of his second conviction, Smith's appellate counsel argued that the trial court should have granted Smith's request for a continuance on the morning of the trial for the reason that he wished to be assigned new counsel. Smith argued that because he and counsel had developed differences, his trial counsel should be permitted to withdraw and new counsel appointed. (ROW, Exhibit 23, *State v. Smith, supra*). Smith outlined many of the same reasons for dismissing counsel as he did in his later motion for new trial, with one exception noted by the court. Smith argued in his

motion for new trial, in addition to the reasons he stated to the court on the morning of trial, that financial differences had arisen between him and counsel and that there existed a conflict of interest; additionally Smith asserted that his trial counsel was not really authorized to represent him.

The Court of Appeals affirmed the trial court's denial of Smith's request for a continuance on the morning of trial and in so doing indicated what decision it would have made on the overlapping claims presented by Smith in his motion for new trial. The Court said:

> In this case, Smith did not have an unqualified right to retain the counsel of his choice. [Citations omitted.] The decision to grant or deny a continuance to allow him to obtain new counsel was within the discretion of the court, [omitted] and we will not overturn the court's decision absent an abuse of that discretion. An abuse of discretion is more than an error in judgment; it implies that the lower court's decision was unreasonable, i.e., not supported by a sound reasoning process, [omitted] or that it was arbitrary or unconscionable. [omitted]
>
> ***
>
> Here, the trial court's decision was based on sound reasoning. Smith had waited until the morning of the trial to make his request. His counsel was the same counsel who had represented him through his first trial, the appeal, and the remand. Although Smith indicated dissatisfaction with counsel, he did not question counsel's competence to handle the trial. He merely disagreed with counsel's understandable reluctance to pursue a course of action that had nothing to do with the trial. He did not indicate that he had retained other counsel at that time, and thus he would have required time to find another attorney. Moreover, counsel disputed Smith's claim that he had not been kept apprised of the proceedings. And the state had subpoenaed numerous witnesses and was prepared to start the trial.
>
> Based on all of these factors, which the trial court explicitly considered, we hold that the court did not err in denying Smith's request to change attorneys. We emphasize that Smith's disagreement with counsel was not, as stated in Smith's brief, related to the approach to be taken or the strategy to be used during the trial. It related instead to the decision not to pursue a federal action based on the earlier denial of the motion to

preclude the second trial of Smith on the murder charge. Again contrary to Smith's allegations, the trial court did allow him to explain fully his disagreement with counsel. Smith was allowed to address the court directly, and the court's statement that it would not "hear from him again" was only an indication that it would further communicate with him through his counsel with respect to all other matters.

Finally, the affidavit that Smith filed, which related to alleged financial problems between him and counsel, contained the allegation that counsel had been neither retained nor appointed and further alleged the existence of a potential conflict of interest. But, the affidavit was not presented to the court until after the trial as part of a motion for a new trial, so the court could not have considered it in deciding whether to grant a continuance before the trial. Smith does not challenge the denial of his motion for a new trial. Therefore, we overrule the first and second assignments of error relating to the trial court's denial of Smith's request, on the morning of trial, to change counsel.

*State v. Smith, supra*. Though the Court of Appeals refused to consider what impact if any Smith's affidavit would have had on its decision to affirm the trial court, Respondent submits that it would have decided, as the trial court did, that:

Crim.R.33(E) prevents a Court from granting a motion [under O.R.C. 2945.79] for a new trial unless it affirmatively appears from the record that the defendant was prejudiced by the particular problem, or it prevented him from having a fair trial. Defendant Smith does not present evidence or raise a sufficient question regarding any showing of an irregularity in the process. Clearly Mr. Burlew was authorized to serve as his counsel. The first time this was raised as an issue was after two jury trials, an interim appeal (on which he prevailed) and a motion to dismiss [on double jeopardy]. That Mr. Burlew and the deceased's family's attorney had a professional relationship is not problematic. While Mr. Smith and Mr. Burlew may have had some issues between them, they do not constitute an "irregularity in the proceedings [as required by O.R.C. 2945.79]."

Nor does defendant show that any irregularity or problem prevented him from having a fair trial, or that any irregularity affected materially his substantial rights as R.C. 2945.71 [R.C. 2945.79] provides, or that he was prejudiced as a result, as Crim.R.33(E) requires. Mr. Burlew is an experienced trial attorney who was intimately familiar with the case facts, witnesses testimony, issues. He very professionally and ably represented Mr. Smith. That Mr. Smith was convicted does not change the nature of Mr. Burlew's representation.

The Court therefore finds that the motion for new trial is not well taken and it is denied.

(ROW, Exhibit 18, p.2.)  Smith, in his claim before this court, must demonstrate that his appellate counsel performed deficiently when she failed to assert on appeal that the trial court's denial of the motion was erroneous.  Smith cannot show that the trial court's decision was erroneous; he cannot show that there was an irregularity in the proceedings or that he was denied a fair trial.

Smith must additionally demonstrate that his appeal would have turned out differently had this claim been presented.  Respondent submits that the decision of the state Court of Appeals would have been the same even if this claim had been presented.  The Court of Appeals would have been required to review the trial court's decision under the same standard as the trial court, that it to determine whether there was an irregularity and whether Smith was as a result prevented from having a fair trial. The Court of Appeals would undoubtedly have found the trial court's analysis well reasoned; the trial court's decision was well reasoned under Ohio law and relied upon reasonable findings of fact clearly supported in the record. Thus the Court would have overruled a claim that the motion for new trial should have been granted

This federal court in its review must find that Smith's appellate counsel was therefore not deficient for failing to include this claim in Smith's appeal.  For the reason that the trial court decision was well reasoned under relevant Ohio law, this court must also find that the outcome of Smith's appeal would not have been different.  Smith's appellate counsel was therefore not ineffective for failing to raise the claim Smith asserts in Ground Eight.

**D.  Smith's Appellate Counsel was not ineffective for failing to argue that the trial court committed plain error by instructing the jury on the culpable mental state (mens rea) of the element of purpose / intent in the offense of Murder, R.C. 2903.02, in violation of Smith's due process rights.**

Smith attempts to argue in Ground Nine that the trial court would have been reversed had his appellate counsel argued that it was "plain error" for the trial court to give the jury instruction it did on the element of purpose, which element had to proven in order to sustain his conviction for murder.  Smith is wrong; his appellate counsel would not have been able to get his conviction reversed on the basis that the jury instructions were wrong and that giving the instructions constituted plain error under Crim.R. 52 (B).

Crim. R. 52(B) provides that, "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."  In this case, Smith's experienced trial counsel did not object to the jury instructions on the basis that the definition of purpose/intent was incorrect.  His direct appeal counsel did not identify faulty jury instructions as a basis for appeal.  Though Smith argued in his application to reopen that the jury instructions were faulty, referring to Transcript Volume V pages 880-882, he failed to make a persuasive argument as to why the jury instructions were faulty.  He makes reference to the Ohio cases of *State v. Craft*, 52 Ohio App. 2d 1 (1977) and *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 209 (1982) for the general propositions, respectively, that plain error is not easily or readily definable and each case must proceed on its own facts and that plain error is obvious and prejudicial and would have an adverse affect on public confidence in judicial proceedings.  Having set forth these criteria, Smith cites O.R.C. 2901.05 (A) for the following:

Every person accused of an offense is presumed innocent until

proven guilty beyond a reasonable doubt, and the burden of proof for all
the elements is upon the prosecution …

Smith then sums up by saying that the trial court did not instruct the jury that intent is
not conclusive unless proven by the State; he says too that a trial court's general
instructions to a jury concerning a conclusive presumption of intent violates the
Fourteenth Amendment because a juror may view the instructions as shifting the burden
of proof, citing *Sandstrom v. Montana*, 442 U.S. 510 (1979).  (Exhibit 27, p. 8-9.)

Despite that Smith correctly recites the rule of *Sandstrom*, he is wrong in his
analysis that the jury instructions in this case are inappropriate.  The instructions do not
violate due process.  The jury instructions on the element of purpose or intent, which
begin on page 880 and continue to page 882, are preceded by the trial court's general
instructions on page 873 that admonish the jury that:

> The defendant is presumed innocent unless and until guilt is
> established beyond a reasonable doubt.  The defendant must be acquitted
> unless the State produces evidence which convinces you beyond a
> reasonable doubt of every essential element of the crime charged.

(Exhibit 39, Tr. Volume V).  On pages 880-882, the trial court advised the jury as follows
on the definition and proof of the element of purpose, saying:

> Purpose to commit a crime, that is, here, to cause the death of
> Eugene Jenkins, is an essential element of the crime of murder.  A person
> acts purposely when he or she specifically intends to cause a certain
> result.  The State must prove here that at the time Edward Smith acted,
> there was present in his mind ---in his mind, a specific intent to cause the
> death of Eugene Jenkins.

> Purpose is a decision of the mind to do an act, with a conscious
> objective of producing a specific result.  To do an act purposely, means to
> do it intentionally.  Purposely and intent mean the same thing.  The
> purpose with which a person does an act is known only to him or herself,
> unless he or she expresses it to others, or indicates it by his or her own
> conduct.  The purpose with which a person does an act is determined
> from the manner in which it is done, the means used, and all the other

facts and circumstances in evidence.

If a wound is inflicted upon a person with a deadly weapon, in a manner calculated to destroy life or inflict great bodily harm, you may infer a purpose to cause the death from the use of a weapon.  The presence or absence of a motive is one of the circumstances bearing upon purpose. However, there need not be proof of a motive.

In *Montana v. Egelhoff*, 518 U.S. 37 (1996), the United States Supreme Court

distinguished its holding in *Sandstrom*, saying:

\*\*\*  *In re Winship,* 397 U.S. 358, 364, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970)*,* announced the proposition that the Due Process Clause requires proof beyond a reasonable doubt of every fact necessary to constitute the charged crime, and  *Sandstrom v. Montana,* 442 U.S. 510, 524, 61 L. Ed. 2d 39, 99 S. Ct. 2450 (1979) *,* established a corollary, that a jury instruction which shifts to the defendant the burden of proof on a requisite element of mental state violates due process.  These decisions simply are not implicated here because, as the Montana court itself recognized, "the burden is not shifted" under § 45-2-203.  [*State v. Egelhoff*,] 272 Mont., at 124, 900 P. 2d, at 266.  The trial judge instructed the jury that "the State of Montana has the burden of proving the guilt of the Defendant beyond a reasonable doubt," App. to Pet. for Cert. 27a, and that "[a] person commits the offense of deliberate homicide if he purposely or knowingly causes the death of another human being," id., at 28a.  Thus, failure by the State to produce evidence of respondent's mental state would have resulted in an acquittal.  That acquittal did not occur was presumably attributable to the fact, noted by the Supreme Court of Montana, that the State introduced considerable evidence from which the jury might have concluded that respondent acted "purposely" or "knowingly."  See 272 Mont., at 122, 900 P. 2d, at 265.  For example, respondent himself testified that, several hours before the murders, he had given his handgun to Pavola and asked her to put it in the glove compartment of Christenson's car. Ibid.; 5 Tr. 1123.  That he had to retrieve the gun from the glove compartment before he used it was strong evidence that it was his "conscious object" to commit the charged crimes; as was the execution-style manner in which a single shot was fired into the head of each victim.

Recognizing that *Sandstrom* is not directly on point, the Supreme Court of Montana described §45-2-203 as a burden-reducing, rather than burden-shifting, statute.  272 Mont., at 122-123, 124, 900 P. 2d, at 265, 266. This obviously was not meant to suggest that the statute formally reduced the burden of proof to clear and convincing, or to a mere preponderance; there is utterly no basis for that, neither in the text of the

law nor in the jury instruction that was given. What the court evidently meant is that, by excluding a significant line of evidence that might refute mens rea, the statute made it easier for the State to meet the requirement of proving mens rea beyond a reasonable doubt -- reduced the burden in the sense of making the burden easier to bear. But any evidentiary rule can have that effect. "Reducing" the State's burden in this manner is not unconstitutional, unless the rule of evidence itself violates a fundamental principle of fairness (which, as discussed, this one does not). We have "rejected the view that anything in the Due Process Clause bars States from making changes in their criminal law that have the effect of making it easier for the prosecution to obtain convictions." *McMillan v. Pennsylvania,* 477 U.S. 79, 89, n. 5, 91 L. Ed. 2d 67, 106 S. Ct. 2411 (1986).

*Id.* at 54-55.[2]

Smith argues that *Sandstrom* applies to his case because the jury instructions shifted the burden of proof. However *Sandstrom* does not apply because the jury instructions in *Sandstrom* were worded more strongly; in this case the wording of the jury instructions makes *Sandstrom* inapplicable. The Ohio jury instructions that permit a jury to infer the defendant's intent from his actions do not shift the burden of proof.

In *State v. Evans* (Dec. 27, 2001), Franklin App. No. 01AP-594, 2001 Ohio 8860, 2001 Ohio App. LEXIS 5918, the Franklin County Court of Appeals, faced with the same

---

[2]      In *Montana v. Egelhoff*, the defendant was convicted of deliberate homicide after police found him drunk in a vehicle next to his gun, with the two victims, each dead of gunshot wounds. Pursuant to Mont. Code Ann. § 45-2-203, the jury was instructed that it could not consider voluntary intoxication in determining the existence of the requisite mental state. The state supreme court reversed the conviction, holding that the rule denied defendant due process because the state did not have to prove beyond a reasonable doubt every element of the crime where the jury could not consider evidence relevant to the issue of mens rea. The Supreme Court reversed, holding that defendant did not uphold his burden of showing that the rule allowing consideration of intoxication on the question of intent was a fundamental principle under the Fourteenth Amendment to the U.S. Constitution, because it was too new, had not received sufficiently uniform and permanent allegiance, and displaced a lengthy and justified common law tradition. The court noted the validity of the statute in deterring irresponsible behavior while drunk and upheld the principle that the introduction of relevant evidence was subject to limitation by the state for a "valid" reason.

claim as Smith makes herein, explained why the identical jury instructions in that case

were not unconstitutional, relying upon *State v. Getsy*, 84 Ohio St. 3d 180 (1998), *cert.*

*denied*, 527 U.S. 1042 (1999):

> In his third assignment of error, defendant contends the trial court
> erred by instructing the jury it could infer defendant intended to purposely
> kill another from the use of a deadly weapon under the circumstances of
> this case.
>
> [***]
>
> Defendant contends the trial court erred when it instructed the jury
> as follows:
>
> A person acts purposely when it is his specific intention to cause a
> certain result. To do an act purposely is to do it intentionally and not
> accidentally. Purpose and intent mean the same thing. The purpose with
> which a person does an act is known only to himself, unless he expresses
> it to others or indicates it by his conduct. Since you cannot look into the
> mind of another, you must determine purpose from all the facts and
> circumstances in evidence.
>
> If a wound is inflicted with a deadly weapon in a manner calculated
> to destroy life, the purpose to cause the death may be inferred from the
> use of the weapon, along with all the other facts and circumstances in
> evidence. (Tr. 408-409.)
>
> In *State v. Getsy* (1998), 84 Ohio St. 3d 180, 196, 702 N.E.2d 866,
> *certiorari denied* (1999), 527 U.S. 1042, 144 L. Ed. 2d 805, 119 S. Ct.
> 2407, the Ohio Supreme Court considered a trial court's jury instruction
> that "if a wound is inflicted upon a person with a deadly weapon in a
> manner calculated to destroy life the purpose to kill may be inferred from
> the use of the weapon" and whether it created a mandatory presumption
> in violation of the constitution.  The Ohio Supreme Court determined the
> use of "may" in the instruction indicated the presumption was permissive,
> not one the jury was required to accept.  *Id.*  As in *Getsy*, the trial court
> here used "may" in its jury instruction.  Based on *Getsy*, the language the
> trial court used did not on its face create an impermissible presumption.
>
> Contrary to defendant's contentions, such a determination is not
> inconsistent with *Sandstrom v. Montana* (1979), 442 U.S. 510, 61 L. Ed.
> 2d 39, 99 S. Ct. 2450.  In *Sandstrom*, the United States Supreme Court
> concluded that "*** whether a defendant has been accorded his
> constitutional rights depends upon the way in which a reasonable juror

could have interpreted the instruction." *Id.* at 514. The language at issue in the *Sandstrom* jury instruction stated "the law presumes that a person intends the ordinary consequences of his voluntary acts," and was deemed unconstitutional because a jury may have interpreted the instruction as constituting either a burden-shifting presumption or a conclusive presumption. *Id.* at 513. The permissive language in the jury instruction of this case differs from the language of the jury instruction in *Sandstrom*, and may not reasonably be interpreted as creating a mandatory presumption.

*Id.* 2001 Ohio App. LEXIS 5918, * 19-22.[3] See also *State v. Mackey* (Dec. 9, 1999), Cuyahoga App. No. 75300, 1999 Ohio App. LEXIS 5902, (an intent to kill may be inferred where the natural and probable consequence of a wrongful act is to produce death); *State v. Lambert* (Aug. 2, 1996), Montgomery App. No. 15474, 1996 Ohio App. LEXIS 3274 (the element of purpose may be inferred where the natural and probable consequence of a defendant's act is to produce death). The Ohio jury instructions therefore were not improper.

For purposes of federal habeas corpus review, this court must be reminded that the United States Supreme Court in *Estelle v. McGuire,* 502 U. S. 62 (1991), stated that,

---

[3]     In *State v. Evans*, the Court of Appeals was also asked to examine the jury instructions under a plain error doctrine. Smith's direct appeal counsel would likewise have been required to rely upon plain error. The Franklin County Court of Appeals explained that under this review, the appellant would have had a higher burden for finding error. The higher burden is however similar to the prejudice prong required in a claim of ineffective counsel, now applicable to Smith. The Franklin County Court described the standard as follows:

> As a preliminary matter, we note defendant failed to object to the jury instructions at trial. Absent plain error, the failure to object to improprieties in jury instructions waives the issue on appeal. *State v. Underwood* (1983), 3 Ohio St. 3d 12, 13, 444 N.E.2d 1332. To prove plain error, defendant must demonstrate that, but for the error, the trial's outcome would have been otherwise. *State v. Long* (1978), 53 Ohio St. 2d 91, 97, 372 N.E.2d 804. Additionally, "notice of plain error *** is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus.

"the fact that the [jury] instruction was allegedly incorrect under state law is not a basis for habeas relief."   The Court, in *Estelle* went on to hold that, "Federal habeas courts therefore do not grant relief, as might a state appellate court, simply because the instruction may have been deficient ***.  The only question for us is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.' *Cupp v. Naughten,* 414 U. S. 141, 147 (1973)."   *Id.* at 72.   Pursuant to the reasoning of *State v. Getsy,* this federal court must find that the jury instructions were not only proper but that they did not violate Smith's right to due process.

Because the jury instructions in this case, as in *State v.   Getsy* and *State v. Evans*, were not like the instructions complained of *Sandstrom*, Smith's challenge to the jury instructions on appeal would not have been met with success.  Smith's appellate counsel cannot therefore be found deficient for failing to argue this claim.  Smith was also not prejudiced by this alleged failure because his claim in Ground Nine would not have changed the outcome of his appeal.  Smith's claims in Grounds Ten, Seven, Eight and Nine here must therefore be dismissed.

## CONCLUSION

The Respondent moves this honorable federal habeas corpus court to dismiss the habeas corpus petition for the reasons set forth herein and in the original Return of Writ.  Since this case can be decided from the record, no further hearing should be necessary.  *Keeney v. Tamayo-Reyes,* 504 U. S. 1 (1992); *Williams v. Taylor*, 120 S.Ct. 1479 (2000).  This is not a waiver of hearing.

Respectfully submitted,

JIM PETRO
Attorney General


s\Thelma Thomas Price_____
THELMA THOMAS PRICE (0033976)
Assistant Attorney General
Corrections Litigation Section
150 East Gay Street, 16th Fl.
Columbus, Ohio 43215-6001
(614) 644-7233
(614) 728-9327-Fax
e-mail: tprice@ag.state.oh.us


## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Respondent's Supplemental Answer was sent to Petitioner, Edward Smith, #346-408, Warren Correctional Institution, P.O. Box 120, Lebanon, Ohio 45036 via regular U.S. mail, postage prepaid, this 18th day of February 2004.


s\Thelma Thomas Price_____
THELMA THOMAS PRICE (0033976)
Assistant Attorney General