STATE OF OHIO, Plaintiff-Appellee, -vs- MAURICE MACKEY, Defendant-Appellant

NO. 75300

COURT OF APPEALS OF OHIO, EIGHTH APPELLATE DISTRICT, CUYAHOGA COUNTY

1999 Ohio App. LEXIS 5902

December 9, 1999, Date of Announcement of Decision

SUBSEQUENT HISTORY: [*1] Application for Reopening Denied December 8, 2000, Reported at: *2000 Ohio App. LEXIS 5886.*

PRIOR HISTORY: CHARACTER OF PROCEEDING: Criminal Appeal from the Common Pleas Court. Case No. CR-362936.

DISPOSITION: JUDGMENT: Affirmed.

CASE SUMMARY:

PROCEDURAL POSTURE: Appellant filed an appeal from the order of the Common Pleas Court, Ohio, which convicted him of murder and attempted murder.

OVERVIEW: Appellant was indicted for aggravated murder, attempted aggravated murder, and felonious assault with two gun specifications. The trial court dismissed the felonious assault charge and convicted appellant on the remaining charges to murder and attempted murder. Appellant contended his defense counsel was ineffective for failing to object to various instances of misconduct by the prosecutor and for failing to request a jury instruction on voluntary manslaughter. The court held that comments reflecting the prosecutor's personal beliefs regarding the credibility of the witnesses were improper, but in light of the entire closing argument, the isolated comments were not prejudicial. Failure of counsel to object was not ineffective assistance of counsel. The court also held that appellant's attorney did not render ineffective assistance of counsel by failing to request a jury instruction which was not supported by the evidence and conflicted with the theory of self-defense presented at trial.

OUTCOME: Judgment affirmed; although prosecutor's comments during closing argument were improper, appellant was not entitled to a reversal of his conviction because the closing argument taken as a whole was not unfairly prejudicial. Failure of counsel to object was not ineffective assistance of counsel.

LexisNexis (TM) HEADNOTES - Core Concepts:

Criminal Law & Procedure: Trials: Examination of Witnesses: Cross-Examination
Criminal Law & Procedure: Appeals: Standards of Review: Standards Generally
[HN1] A trial court has broad discretion in imposing limits on the scope of cross-examination. A reviewing court will not reverse the judgment of the trial court for failure to admit or exclude evidence unless the trial court clearly abused that discretion, resulting in prejudice to the complaining party. An abuse of discretion connotes more than a mere error of law. Rather, it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable.

Evidence: Relevance: Prior Acts, Crimes & Wrongs
[HN2] Ohio R. Evid. 608(B) states in pertinent part: specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Criminal Law & Procedure: Trials: Examination of Witnesses: Cross-Examination
Criminal Law & Procedure: Evidence: Impeachment Evidence
[HN3] Effective cross-examination demands that some allowance be made to inquire about prior instances of misconduct if the behavior directly relates to the truthfulness of the witness. However, that cross-examination about prior acts of misconduct must relate directly to the truthfulness of the witness. The witness may not be impeached by evidence which merely contradicts his or her testimony on a matter which is collateral and not material to any issue in the trial. Only intrinsic and not extrinsic evidence may be used to

establish the specific instances of misconduct. The examiner is bound by the responses of the witness.

Evidence: Relevance: Relevant Evidence
[HN4] "Relevant evidence" is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Ohio R. Evid. 401.

Evidence: Relevance: Character Evidence
[HN5] Ohio R. Evid. 404 (A)(1) states: (A) Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, subject to the following exceptions: (1) Character of accused. Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same is admissible; however, in prosecutions for rape, gross sexual imposition, and prostitution, the exceptions provided by statute enacted by the General Assembly are applicable.

Evidence: Relevance: Prior Acts, Crimes & Wrongs
[HN6] Ohio R. Evid. 404(B) provides that evidence of other acts is admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident. The evidence is relevant if it tends to show any of these purposes.

Criminal Law & Procedure: Criminal Offenses: Homicide: Murder
[HN7] Murder requires that the perpetrator purposely causes the death of another.

Criminal Law & Procedure: Scienter: Specific Intent
Criminal Law & Procedure: Jury Instructions: Particular Instructions: Reasonable Doubt
[HN8] When a defendant pleads not guilty to a charge for which an element is a specific intent, the defendant has placed intent squarely at issue. The state is required to prove the specific intent beyond a reasonable doubt.

Criminal Law & Procedure: Scienter
[HN9] Motive has been defined as a mental state which induces an act.

Criminal Law & Procedure: Counsel: Effective Assistance
[HN10] To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient, and that the deficient performance prejudiced the defense. A properly licensed attorney is presumed to execute his duties in an ethical and competent manner. Ineffectiveness is demonstrated by showing that counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the U.S. Const. amend. VI. To establish prejudice, a defendant must show that there is a reasonable possibility that, but for counsel's errors, the result of the proceeding would have been different.

Criminal Law & Procedure: Trials: Motions for Acquittal
[HN11] A trial court is required to grant a motion for acquittal made pursuant to Ohio R. Crim. P. 29 if the evidence is insufficient to support a conviction for the offense. A trial court shall not grant a Rule 29 motion, if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.

Criminal Law & Procedure: Appeals: Standards of Review: Standards Generally
Criminal Law & Procedure: Evidence: Weight & Sufficiency
[HN12] Sufficiency is a legal standard which is applied to determine whether the evidence admitted at trial is legally sufficient to support the verdict as a matter of law. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

Criminal Law & Procedure: Evidence: Weight & Sufficiency
[HN13] Legal sufficiency is a test of adequacy. Whether the evidence presented in a case is legally sufficient to sustain a verdict is a question of law and a conviction based upon legally insufficient evidence constitutes a denial of due process.

Criminal Law & Procedure: Criminal Offenses: Homicide: Murder
[HN14] *Ohio Rev. Code Ann. § 2903.02 (A)* proscribes a person from purposely causing the death of another.

Criminal Law & Procedure: Scienter: Specific Intent
[HN15] See *Ohio Rev. Code Ann. § 2901.22(A)*.

Criminal Law & Procedure: Scienter
[HN16] Intent need not be proven by direct testimony. Purpose or intent can be established by circumstantial evidence.

Criminal Law & Procedure: Criminal Offenses: Homicide: Murder

Criminal Law & Procedure: Scienter: Specific Intent
[HN17] An intent to kill may be inferred where the natural and probable consequence of a wrongful act is to produce death.

Criminal Law & Procedure: Scienter: Specific Intent
[HN18] Intent is not easily proven by direct evidence but is usually proven by reference to the surrounding facts and circumstances. Those surrounding facts and circumstances include the nature of the instrument used, its tendency to end life if designed for that purpose, and the manner in which any wounds were inflicted.

Criminal Law & Procedure: Criminal Offenses: Homicide: Murder
Criminal Law & Procedure: Scienter: Specific Intent
[HN19] A jury can infer intent to kill by the defendant's use of a firearm, an inherently dangerous instrumentality, the use of which is likely to produce death.

Criminal Law & Procedure: Jury Instructions
[HN20] A criminal defendant has the right to expect that the trial court will give complete jury instructions on all issues raised by the evidence. Jury instructions should be tailored to fit the facts of each case.

Criminal Law & Procedure: Jury Instructions: Particular Instructions: Lesser Included Offenses
[HN21] The trial court must give an instruction on a lesser-included offense or an inferior-degree offense when the evidence adduced at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser-included offense or the inferior-degree offense.

Criminal Law & Procedure: Criminal Offenses: Homicide: Voluntary Manslaughter
Criminal Law & Procedure: Jury Instructions: Particular Instructions: Lesser Included Offenses
[HN22] Voluntary manslaughter is an inferior-degree offense of aggravated murder and murder. An inferior-degree offense is one in which the elements of the offense are contained within the higher-degree offense but additional mitigating elements are present in the inferior-degree offense.

Criminal Law & Procedure: Criminal Offenses: Homicide: Voluntary Manslaughter
[HN23] *Ohio Rev. Code Ann. § 2903.03(A)* defines voluntary manslaughter as knowingly causing the death of another while under the influence of a sudden passion or in a sudden fit of rage which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force. A jury must find a defendant guilty of voluntary manslaughter rather than aggravated murder or murder if the prosecution proves, beyond a reasonable doubt, that the defendant knowingly caused the victim's death, and if the defendant establishes, by a preponderance of the evidence, the existence of a mitigating circumstance.

Criminal Law & Procedure: Criminal Offenses: Homicide: Voluntary Manslaughter
Criminal Law & Procedure: Trials: Burdens of Proof: Defense
Criminal Law & Procedure: Jury Instructions: Particular Instructions: Lesser Included Offenses
[HN24] The defendant has the burden of producing evidence relating to the existence of a mitigating circumstance in order for the jury to consider voluntary manslaughter as an inferior-degree offense of aggravated murder. In addition to the burden of production, the defendant also has the burden of persuasion which means the defendant must establish the existence of a mitigating circumstance.

Criminal Law & Procedure: Criminal Offenses: Homicide: Voluntary Manslaughter
Criminal Law & Procedure: Jury Instructions: Particular Instructions: Lesser Included Offenses
[HN25] The trial court must determine, as a matter of law, whether evidence of reasonably sufficient provocation caused by the victim is present in the case to warrant a voluntary manslaughter instruction. First, the trial court must apply an objective standard to determine if the provocation was reasonably sufficient to have brought on a sudden passion or sudden fit of rage. If the answer is in the affirmative, then a subjective standard is used to determine if that defendant was actually under the influence of the sudden passion or fit of rage.

Criminal Law & Procedure: Criminal Offenses: Homicide: Voluntary Manslaughter
Criminal Law & Procedure: Jury Instructions: Particular Instructions: Lesser Included Offenses
[HN26] Fear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage. Even fear for one's own safety or that of another is insufficient to show sudden passion or fit of rage. Unless there is evidence the defendant subjectively acted under the influence of a sudden passion or fit of rage brought on by serious provocation by the victim which was reasonably sufficient to incite the defendant into using deadly force, a jury instruction on voluntary manslaughter is not warranted.

Criminal Law & Procedure: Counsel: Effective Assistance: Trials
Criminal Law & Procedure: Jury Instructions: Particular Instructions: Lesser Included Offenses
[HN27] Generally, there is a strong presumption that trial counsel's failure to request an instruction on lesser

offenses is a matter of trial strategy. It is reasonable trial strategy to argue self-defense and not request an instruction on a lesser offense.

Criminal Law & Procedure: Appeals: Prosecutorial Misconduct
[HN28] A prosecuting attorney's conduct during trial does not constitute a ground for error unless the conduct deprives the defendant of a fair trial. The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. The effect of the prosecutor's alleged misconduct must be considered in light of the whole trial.

Criminal Law & Procedure: Appeals: Prosecutorial Misconduct
Criminal Law & Procedure: Trials: Closing Arguments
[HN29] The test regarding prosecutorial misconduct in closing argument is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. A prosecutor is afforded wide latitude in closing arguments. It is within the trial court's sound discretion to determine if a prosecutor has gone beyond the bounds permitted. A judgment will not be reversed if it is clear beyond a reasonable doubt that, absent the prosecutor's remarks, the jury would have found the defendant guilty. Closing arguments must be viewed in their entirety to determine whether the disputed remarks were prejudicial.

Criminal Law & Procedure: Trials: Closing Arguments: Fair Comment & Fair Response
[HN30] Prosecutors should not express their personal beliefs or opinions regarding a defendant's guilt or allude to matters not supported by admissible evidence. However, a prosecutor may express his personal opinion about the guilt of the accused if that opinion is based on the evidence presented at trial. Further, a prosecutor may argue that certain evidence tends to make a witness more or less credible but may not state his own belief as to whether a witness is telling the truth.

Criminal Law & Procedure: Trials: Closing Arguments
[HN31] Attorneys can be carried away by the excitement of trial and the ardor of their advocacy and make improper remarks.

Criminal Law & Procedure: Counsel: Effective Assistance: Pleas
[HN32] The failure to object alone is not enough to sustain a claim of ineffective assistance of counsel.

COUNSEL: For Plaintiff-Appellee: WILLIAM D. MASON, Cuyahoga County Prosecutor, BY: DOMINIC DELBALSO, Assistant County Prosecutor, Cleveland, Ohio.

For Defendant-Appellant: GORDON S. FRIEDMAN, Cleveland, Ohio.

JUDGES: LEO M. SPELLACY, JUDGE. TERRENCE O'DONNELL, P.J., AND ANNE DYKE, J., CONCUR.

OPINIONBY: LEO M. SPELLACY

OPINION: JOURNAL ENTRY AND OPINION

SPELLACY, J.:

Defendant-appellant Maurice Mackey ("appellant") appeals from his conviction for murder and attempted murder.

Appellant assigns the following errors for review:

I. IT WAS PREJUDICIAL ERROR FOR THE TRIAL COURT TO ADMIT STEPHANIE WHITMORE'S TESTIMONY REGARDING APPELLANT'S PRIOR ACTS WHICH DENIED APPELLANT HIS RIGHT TO A FAIR TRIAL AS GUARANTEED BY ARTICLE I, § 10 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

II. DEFENSE COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO THE ADMISSION OF IRRELEVANT AND HIGHLY PREJUDICIAL EVIDENCE OF APPELLANT'S PRIOR ACTS AS 404 (A) CHARACTER EVIDENCE THEREBY DENYING APPELLANT EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE[*2] SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

III. DEFENSE COUNSEL'S FAILURE TO OBJECT TO THE ADMISSION OF IRRELEVANT AND HIGHLY PREJUDICIAL TESTIMONY CONCERNING APPELLANT'S POSSESSION OF GUNS AND RIFLES CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

IV. THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT'S RULE 29 MOTION FOR ACQUITTAL.

V. DEFENSE COUNSEL'S FAILURE TO REQUEST A LIMITING JURY INSTRUCTION CONCERNING THE PROPER USE OF 404(A) CHARACTER

EVIDENCE CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

VI. DEFENDANT, WHO WAS CHARGED WITH MURDER, WAS PREJUDICED BY HIS COUNSEL'S FAILURE TO REQUEST A JURY INSTRUCTION ON VOLUNTARY MANSLAUGHTER AS SUPPORTED BY THE FACTS OF THIS CASE AND IN VIOLATION OF APPELLANT'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT.

VII. APPELLANT'S CONVICTIONS OF MURDER AND ATTEMPTED MURDER ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

VIII. DEFENSE COUNSEL'S FAILURE TO OBJECT TO VARIOUS INSTANCES OF PROSECUTORIAL MISCONDUCT WAS UNREASONABLE, [*3] IMPROPER AND CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

Finding the appeal to lack merit, the judgment of the trial court is affirmed.

I.

Appellant was indicted for aggravated murder, attempted aggravated murder, and felonious assault with two gun specifications. Appellant was brought to trial before a jury on the charges. At the close of the state's case, the trial court partially granted appellant's Crim.R. 29 motion for acquittal. The trial court dismissed the felonious assault charge and reduced the remaining charges to murder and attempted murder.

The night of April 14, 1998, began pleasantly for both appellant and the victims. Cleveland Police Officer David Smith and Edward Wright went to the Black Shield Club, arriving before 10:00 p.m. The club is a place frequented by police officers. The two men stayed there approximately an hour and a half before driving to the Theatrical Bar in downtown Cleveland. After forty-five minutes, Smith and Wright decided to go to the Office Lounge, arriving after midnight. Smith dated Bridget Jackson, one of the dancers at the Office Lounge. Jackson joined Smith and[*4] Wright at their table and the three began to converse.

Appellant and his girlfriend, Stephanie Whitmore, also were out for the evening. They attended a basketball game at Gund Arena with another couple. Afterwards, the four people went to the Flats in Cleveland for a late dinner. After eating, the two couples also went to the Office Lounge. The fatal altercation between appellant and Smith began when Whitmore approached the table at which Smith, Wright, and Jackson sat. Whitmore asked Jackson to perform a "table dance" for appellant. Jackson agreed but stated she never meant to perform for appellant. Apparently, Smith made some remark about Whitmore's request. Whitmore did not hear what Smith said but thought the statement was unkind based upon the response of Smith and Wright.

Whitmore returned to the bar where she had been seated. Appellant asked what had happened. Whitmore told appellant she did not know what had been said. Appellant continued to press the issue. Whitmore left to get some air. Appellant and Smith began exchanging hostile stares. Wright walked by appellant on his way to the back of the bar. Nothing was said between the men at any point inside the Office Lounge. [*5]

Upon Whitmore's return, appellant told her he felt they should leave to avoid any problem with Smith and Wright. They only had been at the Office Lounge fifteen to thirty minutes. Practically at the same time, Smith and Wright also decided to leave to prevent a confrontation. Although Wright noticed appellant and Whitmore leaving, Smith and Wright continued with their plan to depart from the Office Lounge.

Appellant and Whitmore were on the sidewalk when they heard the music from the Office Lounge grow louder as the door opened. They turned to face the bar as Smith and Wright walked out. Wright reported that appellant asked if they had a problem with him. Appellant averred that Smith asked if he had something to say to him. Appellant further stated that he saw Smith reach for a weapon. Appellant testified he drew his weapon as Smith's gun began to clear its holster. Appellant fired at Smith, striking Smith in the heart. After a pause, appellant fired his weapon again, shooting a running Wright in the side as he frantically tried to reenter the club. Wright had run toward the Office Lounge to escape. He first pounded on the door, which was kept locked. When no one answered, Wright [*6]knocked out the plexiglass window and jumped inside where he fell to the floor, wounded. Smith died almost immediately from the gunshot which pierced his heart, diaphragm, liver, and kidney. Smith's weapon still was in his hand with a bullet in the chamber.

Appellant and Whitmore ran to their automobile and drove to their Solon home. From there, Whitmore paged Shawin Mitchell, one of the dancers at the Office Lounge. Mitchell telephoned Whitmore in response to

the page. Mitchell told Whitmore that the police were at the Office Lounge and that one of the victims was not expected to live. Whitmore asked Mitchell not to tell anyone about their conversation. Instead, Mitchell gave the information to the police who traced the telephone number to appellant's home.

The police arrived at the house between 4:30 and 5:00 a.m. The only light on in the residence was upstairs. The police received no response to their knocks. Finally, appellant's attorney arrived and arranged for appellant and Whitmore to surrender. Appellant and Whitmore walked outside around 10:30 a.m. and were placed under arrest.

Inside the residence, police confiscated five weapons, two handguns and three rifles. The rifles[*7] were found in a locked gun cabinet. One of the weapons seized, a Para-Ordinance .45 caliber semi-automatic pistol was determined to be the murder weapon.

At trial, appellant testified that he acted in self-defense in shooting Smith and Wright. The jury rejected this affirmative defense and convicted appellant of murder and attempted murder.

II.

In his first assignment of error, appellant contends the trial court abused its discretion by permitting the prosecutor to cross-examine defense witness Stephanie Whitmore about prior incidents of violence between herself and appellant. Appellant argues that the cross-examination should not have been permitted under the Rules of Evidence.

[HN1] A trial court has broad discretion in imposing limits on the scope of cross-examination. *State v. Cobb (1991), 81 Ohio App. 3d 179, 610 N.E.2d 1009*. A reviewing court will not reverse the judgment of the trial court for failure to admit or exclude evidence unless the trial court clearly abused that discretion, resulting in prejudice to the complaining party. *State v. McCray (1995), 103 Ohio App. 3d 109, 658 N.E.2d 1076*. An abuse of discretion connotes more than a mere error[*8] of law. Rather, it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *State v. Montgomery (1991), 61 Ohio St. 3d 410*. 413, *575 N.E.2d 167*.

[HN2] Evid.R. 608(B) states in pertinent part:

Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

[HN3] Effective cross-examination demands that some allowance be made to inquire about prior instances of misconduct if the behavior directly relates to the truthfulness of the witness. *State v. Williams (1981), 1 Ohio App. 3d 156, 440 N.E.2d 65*. However, that cross-examination about prior acts of misconduct [*9]must relate directly to the truthfulness of the witness. *State v. Shields (1984), 15 Ohio App. 3d 112, 472 N.E.2d 1110*. The witness may not be impeached by evidence which merely contradicts his or her testimony on a matter which is collateral and not material to any issue in the trial. *State v. Boggs (1992), 63 Ohio St. 3d 418, 588 N.E.2d 813*. Only intrinsic and not extrinsic evidence may be used to establish the specific instances of misconduct. The examiner is bound by the responses of the witness. *State v. Leuin (1984), 11 Ohio St. 3d 172*. 174, *464 N.E.2d 552*.

During cross-examination, the prosecutor asked Whitmore a series of questions regarding a dispute appellant had with another man in which the police were contacted. When questioned by the police at her place of employment, Whitmore falsely denied knowing appellant or where he lived. Whitmore testified she did not want to discuss the matter in front of her customers. Another altercation between Whitmore and appellant again led to the police being contacted. On the stand, Whitmore denied that appellant assaulted her although Whitmore had told the police that he had. [*10]

These instances of Whitmore's deception to the police clearly were probative of her truthfulness. In the one incident, Whitmore, whatever her motivation, sought to deceive and thwart the police investigation of the altercation between appellant and another man. In the second instance, Whitmore testified that she lied to the police about appellant allegedly assaulting her. The prosecutor could inquire about these instances of misconduct under Evid.R. 608 (B).

Appellant argues that, even if the evidence was admissible under Evid.R. 608, it should have been excluded under Evid.R. 403 (A) which provides that relevant evidence must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Appellant submits that the jury could have

been made aware of Whitmore's less than forthcoming behavior without reference to specific acts.

[HN4] "Relevant evidence" is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Evid.R. 401. The evidence in question related directly to Whitmore's deception to the police and her own admission[*11] that she falsely accused appellant of a crime. Appellant's entire defense consisted of the testimony of Whitmore and appellant. Whitmore's veracity was directly in issue in the instant case. Therefore, the trial court did not abuse its discretion by permitting the state to cross-examine Whitmore concerning the past incidents.

Lastly, appellant argues that the evidence of his prior acts should have been excluded under [HN5] Evid.R. 404 (A) (1). That rule states:

(A) Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, subject to the following exceptions:

(1) Character of accused. Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same is admissible; however, in prosecutions for rape, gross sexual imposition, and prostitution, the exceptions provided by statute enacted by the General Assembly are applicable.

Appellant argues that the state could not have offered any evidence regarding a particular character trait of his until appellant put his character in issue.

[HN6] Evid.R. 404(B) provides that evidence[*12] of other acts is admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident. The evidence is relevant if it tends to show any of these purposes. *State v. Lowe (1994), 69 Ohio St. 3d 527, 634 N.E.2d 616*. Appellant's motive and intent were at issue in the trial below. Intent is relevant if the statute defining the offense requires a particular intent. *State v. Hollis, 1997 Ohio App. LEXIS 2119* (May 15, 1997), Cuyahoga App. No. 70781, unreported. [HN7] Murder requires that the perpetrator purposely causes the death of another. [HN8] When a defendant pleads not guilty to a charge for which an element is a specific intent, the defendant has placed intent squarely at issue. The state is required to prove the specific intent beyond a reasonable doubt. *State v. Smith (1990), 49 Ohio St. 3d 137, 141, 551 N.E.2d 190*. Appellant raised self-defense and, therefore, put his intent directly in issue. See *State v. King, 1995 Ohio App. LEXIS 3812* (Aug. 30, 1995), Summit App. No. 16921, unreported. [HN9] Motive has been defined as a mental state which induces an act. *State v. Curry (1975), 43 Ohio St. 2d 66, 330 N.E.2d 720*. Appellant stated he reacted out[*13] of fear and to defend himself and Whitmore once Smith drew his weapon.

Evidence adduced at trial showed that appellant and Whitmore engaged in an argument while at the Office Lounge. The bartender, a waitress, and one of the dancers all testified that Whitmore and appellant were arguing. Appellant's response in situations where he and Whitmore previously had argued or engaged in disputes was relevant to prove that he may have acted out of anger or jealousy when he shot Smith and Wright. The trial court did not abuse its discretion by admitting the evidence under Evid.R. 404(B).

Appellant's first assignment of error is overruled.

III.

In his second assignment of error, appellant maintains that he was denied effective assistance of counsel when his attorney failed to object to the other acts testimony elicited by the prosecutor during cross-examination of Stephanie Whitmore. Appellant asserts that the admission of the testimony was improper and his attorney should have objected.

[HN10] To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient, and that the deficient performance prejudiced the defense. *Strickland v. Washington (1984), 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052.*[*14] A properly licensed attorney is presumed to execute his duties in an ethical and competent manner. *State v. Smith (1987), 36 Ohio App. 3d 162, 521 N.E.2d 1112*. Ineffectiveness is demonstrated by showing that counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment. *State v. Hamblin (1988), 37 Ohio St. 3d 153, 524 N.E.2d 476*. To establish prejudice, a defendant must show that there is a reasonable possibility that, but for counsel's errors, the result of the proceeding would have been different. *Strickland, supra, at 694.*

In appellant's first assignment of error, it was determined that the trial court properly admitted the evidence at issue. Further, defense counsel did object to the admission of the evidence and an extensive sidebar conference was held on the issue.

Appellant's second assignment of error is meritless.

IV.

In his third assignment of error, appellant contends his attorney was not effective because he did not object to testimony concerning appellant's possession of numerous weapons. The prosecutor questioned Whitmore about appellant's possession of various firearms.[*15] Whitmore replied that appellant enjoyed hunting and admitted appellant kept a number of weapons in their home. A police officer also testified extensively regarding the weapons discovered in appellant's home and the capabilities of the firearms. It is appellant's contention that his attorney should have objected to the questions asked of Whitmore by the prosecutor and filed a motion to suppress the firearms seized from his home.

Appellant relies on *State v. Smith (1985), 29 Ohio App. 3d 9, 502 N.E.2d 656,* in which this court held that a prosecutor's repeated references to the defendant's possession of a pellet gun required reversal due to the prejudice caused by the testimony. The defendant in Smith was charged with a theft offense and the pellet gun was not involved in the offense. The Smith court cited to *United States v. Reid (C.A. 7, 1969), 410 F.2d 1223,* in which the Seventh Circuit stated that the introduction of dangerous weapons found in the belongings of a defendant who was not charged with a crime which depended upon the use of a weapon was prejudicial error.

Appellant was charged with a crime which involved the use of a weapon. [*16]The police officer testified about the weapons seized from appellant's home. The officer stated that, at the time the search was conducted, the police were not aware of what type of weapon had been used in the shooting. The police seized two handguns, a shotgun, an assault-type weapon, and a .458 magnum caliber rifle with a scope. Defense counsel elicited the testimony from the officer that appellant's father was the title owner of the home and that the shotgun, assault weapon, and rifle were found unloaded and secured in a locked gun cabinet.

Some limited testimony regarding the weapons seized was admissible because the police initially were not aware of which weapon was used to kill David Smith. However, the police may have been aware, even at the time the search was conducted, that it was unlikely Smith was shot by either an assault weapon or a rifle described as capable of bringing down large animals. The prosecutor should not have dwelt upon the capabilities of these weapons.

To demonstrate prejudice, appellant must show that the outcome of the trial would have been otherwise had his attorney either objected or filed a motion to suppress.

Here, the jury was aware that appellant[*17] carried a loaded weapon concealed upon his person when he entered the Office Lounge that night. Appellant admitted to carrying the weapon in his automobile that night. Whitmore testified that appellant often secreted a loaded weapon upon his person. She also contradicted appellant's testimony that he only carried the handgun into the Office Lounge that night. Whitmore stated that she felt the weapon upon appellant's person throughout the evening. The testimony about the additional firearms was not so inflammatory that its exclusion would have likely led to appellant's acquittal on the offenses charged.

Appellant's third assignment of error is overruled.

V.

In his fourth assignment of error, appellant asserts that the state introduced insufficient evidence in support of the charge of murder. Appellant argues that the prosecution failed to prove that appellant had the requisite mental state required to convict a defendant for murder. Appellant contends that all of the evidence admitted at trial showed that appellant acted out of fear and in self-defense but did not purposely intend to cause the death of David Smith.

[HN11] A trial court is required to grant a motion for acquittal made pursuant[*18] to Crim.R. 29 if the evidence is insufficient to support a conviction for the offense. *State v. Pickett (1996), 108 Ohio App. 3d 312, 314, 670 N.E.2d 576.* A trial court shall not grant a Crim.R. 29 motion "if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman (1978), 55 Ohio St. 2d 261, 381 N.E.2d 184,* syllabus.

[HN12] Sufficiency is a legal standard which is applied to determine whether the evidence admitted at trial is legally sufficient to support the verdict as a matter of law. *State v. Thompkins (1997), 78 Ohio St. 3d 380, 678 N.E.2d 541.*

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the[*19] crime proven beyond a reasonable doubt.

*State v. Jenks (1991), 61 Ohio St. 3d 259, 574 N.E.2d 492,* at paragraph two of the syllabus. In essence, [HN13] sufficiency is a test of adequacy. Whether the evidence presented in a case is legally sufficient to sustain a verdict is a question of law and a conviction based upon legally insufficient evidence constitutes a denial of due process. *Thompkins, supra.*

[HN14] *R.C. 2903.02 (A)* proscribes a person from purposely causing the death of another. [HN15] Pursuant to *R.C. 2901.22(A)*, a person "acts purposefully when it is his specific intent to cause a certain result***." [HN16] Intent need not be proven by direct testimony. *State v. Burke (1995), 73 Ohio St. 3d 399, 404, 653 N.E.2d 242.* Purpose or intent can be established by circumstantial evidence. *State v. Shue (1994), 97 Ohio App. 3d 459, 646 N.E.2d 1156.* [HN17] An intent to kill may be inferred "where the natural and probable consequence of a wrongful act is to produce death." *State v. Robinson (1954), 161 Ohio St. 213, 118 N.E.2d 517,* paragraph five of the syllabus. [HN18] Intent is not[*20] easily proven by direct evidence but is usually proven by reference to the surrounding facts and circumstances. *State v. Clark (1995), 101 Ohio App. 3d 389, 655 N.E.2d 795.* Those surrounding facts and circumstances include the nature of the instrument used, its tendency to end life if designed for that purpose, and the manner in which any wounds were inflicted. *State v. Eley (1996), 77 Ohio St. 3d 174, 180, 672 N.E.2d 640.* [HN19] A jury can infer intent to kill by the defendant's use of a firearm, an inherently dangerous instrumentality, the use of which is likely to produce death. *State v. Widner (1982), 69 Ohio St. 2d 267, 431 N.E.2d 1025.*

Appellant's position is that the evidence adduced at trial showed he acted in self-defense after Smith followed appellant out of the Office Lounge and pulled out a weapon. Appellant states that he acted to defend his own life and that of Whitmore but had no other reason to harm Wright or Smith.

The state produced evidence at trial proving that a hostile exchange of looks took place between appellant and the two victims. Wright, Whitmore, and appellant all averred that they left the Office Lounge to avoid[*21] a confrontation. The parties met outside and exchanged some sort of statement. Smith and appellant both drew weapons although the evidence was not clear as to who did so first. Appellant testified that Smith's weapon had cleared its holster before appellant reached for his own gun. Appellant still managed to draw his own weapon, aim at Smith, and fire the gun, striking Smith in the heart. Although appellant testified he fired both shots at Smith, the second gunshot struck a running Wright in the side. Appellant's ability to strike two different victims in their torsos shows that appellant did not wildly fire but purposely aimed at two men with a weapon which is manufactured to inflict just the sort of harm suffered by the two victims.

Appellant raised self-defense at trial.

To establish self-defense, the following elements must be shown: (1) the slayer was not at fault in creating the situation giving rise to the affray; (2) the slayer has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) the slayer must not have violated any duty to retreat or avoid the danger. [*22]

*State v. Robbins (1979), 58 Ohio St. 2d 74, 388 N.E.2d 755,* at paragraph two of the syllabus. Evidence submitted at trial showed that appellant exchanged "mean" looks with the decedent. Testimony at trial indicated appellant and Whitmore were not walking toward their vehicle when Smith and Wright exited the bar but were standing near the sidewalk. Wright testified that appellant asked if they had a problem with him. Smith made a gesture indicating he did not understand what appellant had said. Appellant then pulled out his gun, pointed toward the two men, and fired at Smith. This evidence negates appellant's defense that he acted to protect himself and Whitmore from death or great bodily harm. The jury is free to choose between competing interpretations of circumstantial evidence. *State v. Jenks (1991), 61 Ohio St. 3d 259, 273, 574 N.E.2d 492.* The jury can believe all, part, or none of the testimony of each witness who appears at trial. *State v. Nichols (1993), 85 Ohio App. 3d 65, 76, 619 N.E.2d 80.* The jury chose to believe the testimony of the prosecution's witnesses who testified that appellant stared at Smith and Wright with[*23] a negative expression on his face. Wright's testimony indicated that appellant was the aggressor outside the bar that night. When viewed in a light most favorable to the prosecution, the state presented adequate evidence that appellant formed the requisite intent to kill Smith.

Appellant's fourth assignment of error is overruled.

VI.

In his fifth assignment of error, appellant again revisits the issue of the inclusion of the evidence of his other acts. In this assignment of error, appellant contends he received ineffective assistance of counsel because his attorney failed to request a limiting instruction. Appellant again maintains that the evidence was improperly admitted below. As decided in the first assignment of error, the evidence was properly admitted.

Therefore, appellant cannot demonstrate prejudice for his counsel's failure to request a limiting instruction.

Appellant's fifth assignment of error is not well-taken.

VII.

In his sixth assignment of error, appellant contends his attorney prejudiced appellant's defense by failing to request a jury instruction on voluntary manslaughter. Appellant argues that, by not asking the trial court to give this instruction, his counsel[*24] rendered ineffective assistance. Appellant submits that the evidence showing that Smith died with his weapon in his hand after following appellant out of the bar supported an instruction on voluntary manslaughter. Appellant maintains that this evidence justified his use of deadly force in self-defense.

[HN20] A criminal defendant has the right to expect that the trial court will give complete jury instructions on all issues raised by the evidence. State v. Williford (1990). *49 Ohio St. 3d 247, 551 N.E.2d 1279.* Jury instructions should be tailored to fit the facts of each case. *Avon Lake v. Anderson (1983), 10 Ohio App. 3d 297, 462 N.E.2d 188.* [HN21] The trial court must give an instruction on a lesser-included offense or an inferior-degree offense when the evidence adduced at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser-included offense or the inferior-degree offense. *State v. Shane (1992), 63 Ohio St. 3d 630, 590 N.E.2d 272.* [HN22] Voluntary manslaughter is an inferior-degree offense of aggravated murder and murder. *State v. Rhodes (1992), 63 Ohio St. 3d 613, 617, 590 N.E.2d 261.* An[*25] inferior-degree offense is one in which the elements of the offense are contained within the higher-degree offense but additional mitigating elements are present in the inferior-degree offense. See *State v. Cornett (1992), 82 Ohio App. 3d 624, 631, 612 N.E.2d 1275.*

[HN23] R.C. 2903.03(A) defines voluntary manslaughter as knowingly causing the death of another while under the influence of a sudden passion or in a sudden fit of rage which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force. A jury must find a defendant guilty of voluntary manslaughter rather than aggravated murder or murder if the prosecution proves, beyond a reasonable doubt, that the defendant knowingly caused the victim's death, and if the defendant establishes, by a preponderance of the evidence, the existence of a mitigating circumstance. *Rhodes, supra, at 617.* [HN24] Therefore, the defendant has the burden of producing evidence relating to the existence of a mitigating circumstance in order for the jury to consider voluntary manslaughter as an inferior-degree offense of aggravated murder.[*26] In addition to the burden of production, the defendant also has the burden of persuasion which means the defendant must establish the existence of a mitigating circumstance. Id.

[HN25] The trial court must determine, as a matter of law, whether evidence of reasonably sufficient provocation caused by the victim is present in the case to warrant a voluntary manslaughter instruction. *Shane, supra.* First, the trial court must apply an objective standard to determine if the provocation was reasonably sufficient to have brought on a sudden passion or sudden fit of rage. If the answer is in the affirmative, then a subjective standard is used to determine if that defendant was actually under the influence of the sudden passion or fit of rage. *Id. at 634.*

Appellant argued he acted in self-defense when he shot Smith and Wright. Appellant testified he was frightened but never mentioned any feelings of sudden rage or passion. [HN26] "Fear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage." *State v. Mack (1998), 82 Ohio St. 3d 198, 201, 694 N.E.2d 1328.* Even fear for one's own safety or[*27] that of another is insufficient to show sudden passion or fit of rage. See *State v. Harris, 129 Ohio App. 3d 527 718 N.E.2d 488 (1998).* Unless there is evidence the defendant subjectively acted under the influence of a sudden passion or fit of rage brought on by serious provocation by the victim which was reasonably sufficient to incite the defendant into using deadly force, a jury instruction on voluntary manslaughter is not warranted. *State v. Collins (1994), 97 Ohio App. 3d 438, 646 N.E.2d 1142.*

[HN27] Generally, there is a strong presumption that trial counsel's failure to request an instruction on lesser offenses is a matter of trial strategy. See *State v. Griffie (1996), 74 Ohio St. 3d 332, 333, 658 N.E.2d 764.* It is reasonable trial strategy to argue self-defense and not request an instruction on a lesser offense. *State v. Moore (1994), 97 Ohio App. 3d 137, 646 N.E.2d 470.* Appellant's attorney did not render ineffective assistance of counsel by failing to request a jury instruction which was not supported by the evidence and conflicted with the theory of self-defense presented at trial.

Appellant's sixth assignment[*28] of error lacks merit.

VIII.

In his seventh assignment of error, appellant argues that his convictions for murder and attempted murder were against the manifest weight of the evidence.

Appellant contends that he proved he acted in self-defense on the night of the shootings.

To determine whether a conviction is against the manifest weight of the evidence:

The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.

*Thompkins, supra, at 387,* citing *State v. Martin (1983), 20 Ohio App. 3d 172, 175, 485 N.E.2d 717.*

As stated above, evidence admitted at trial negated appellant's stance that he acted in self-defense. The jury was free to believe the prosecution's witnesses and discount the testimony of appellant and Whitmore. [*29] This is hardly the exceptional case where the evidence weighs heavily against appellant's conviction. The jury did not lose its way and convict appellant against the manifest weight of the evidence.

Appellant's seventh assignment of error lacks merit.

IX.

In his eighth assignment of error, appellant contends his defense counsel was ineffective because the attorney did not object to various instances of misconduct by the prosecutor. Appellant asserts that his attorney should have objected to comments made by the prosecutor impugning the credibility of Whitmore and appellant. Appellant further argues that his counsel rendered ineffective assistance by not objecting to references made by the prosecutor to evidence not in the record.

[HN28] A prosecuting attorney's conduct during trial does not constitute a ground for error unless the conduct deprives the defendant of a fair trial. *State v. Apanovitch (1987), 33 Ohio St. 3d 19, 24, 514 N.E.2d 394.* "The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips (1982), 455 U.S. 209, 219, 71 L. Ed. 2d 78, 102 S. Ct. 940.* [*30] The effect of the prosecutor's alleged misconduct must be considered in light of the whole trial. *State v. Maurer (1984), 15 Ohio St. 3d 239, 266, 473 N.E.2d 768.*

The remarks to which appellant objects occurred during closing argument. [HN29] The test regarding prosecutorial misconduct in closing argument is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. *State v. Smith (1984), 14 Ohio St. 3d 13, 14, 470 N.E.2d 883.* A prosecutor is afforded wide latitude in closing arguments. *State v. Jacks (1989), 63 Ohio App. 3d 200, 210, 578 N.E.2d 512.* It is within the trial court's sound discretion to determine if a prosecutor has gone beyond the bounds permitted. *State v. Benge (1996), 75 Ohio St. 3d 136, 661 N.E.2d 1019.* A judgment will not be reversed if it is clear beyond a reasonable doubt that, absent the prosecutor's remarks, the jury would have found the defendant guilty. *State v. Loza (1994), 71 Ohio St. 3d 61, 78, 641 N.E.2d 1082.* Closing arguments must be viewed in their entirety to determine whether the disputed remarks were prejudicial. [*31] *State v. Mann (1993), 93 Ohio App. 3d 301, 312, 638 N.E.2d 585.*

[HN30] Prosecutors should not express their personal beliefs or opinions regarding a defendant's guilt or allude to matters not supported by admissible evidence. *State v. Lott.(1990), 51 Ohio St. 3d 160, 166, 555 N.E.2d 293.* However, a prosecutor may express his personal opinion about the guilt of the accused if that opinion is based on the evidence presented at trial. *State v. Keenan (1993), 66 Ohio St. 3d 402, 408, 613 N.E.2d 203.* Further, a prosecutor may argue that certain evidence tends to make a witness more or less credible but may not state his own belief as to whether a witness is telling the truth. *State v. Carpenter (1996), 116 Ohio App. 3d 615, 622, 688 N.E.2d 1090.*

Toward the beginning of his closing argument, the prosecutor stated:

Because if you believe - for argument's sake, let's assume that once outside of the Office Lounge, that the victim, David Smith, did in fact go for a gun first - certainly I don't believe that happened - but if he did go for a gun first, and if this man was not illegally armed with a weapon that he had in his pants, [*32] would we be here today?

(Tr. 1500). Shortly thereafter, the prosecutor also stated:

So, let's assume that he even went for his gun, which didn't happen as far as I am concerned.

(Tr. 1501). Later, the prosecutor commented on Whitmore having cried during her entire direct examination. The prosecutor stated that he thought it was an act.

These comments reflected the prosecutor's personal beliefs regarding the credibility of the witnesses and were improper. After reviewing the entire closing argument of the prosecutor, the isolated comments were not prejudicial. As noted in *Dunlop v. United States (1897), 165 U.S. 486, 498, 41 L. Ed. 799, 17 S. Ct. 375,* [HN31] attorneys can be carried away by the excitement of trial and the ardor of their advocacy and make improper remarks. The trial court instructed the jury that closing arguments are not evidence. See *State v. Turner (1993), 91 Ohio App. 3d 153, 631 N.E.2d 1117.*

The reference to evidence not supported by the evidence came when the prosecutor stated that Smith was permitted to carry his service weapon concealed upon his person. Appellant's counsel pointed out during his argument that [*33]this statement was not supported by any evidence admitted at trial.

Appellant's attorney did not object to any of the above statements. [HN32] The failure to object alone is not enough to sustain a claim of ineffective assistance of counsel. Objections tend to disrupt the flow of the trial and can be considered technical and bothersome to a Jury. *State v. Davie (1997), 80 Ohio St. 3d 311, 686 N.E.2d 245.* The appellate court's role is not to second guess the strategic decisions of trial counsel. *State v. Carter (1995), 72 Ohio St. 3d 545, 558, 651 N.E.2d 965.* Ample evidence was admitted at trial supporting the jury's finding of guilty on the charges of murder and attempted murder. There is no showing that the result of the trial would have been different but for defense counsel's failure to object.

Appellant's eighth assignment of error is overruled.

Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.

The Defendant's conviction[*34] having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

TERRENCE O'DONNELL, P.J, and

ANNE DYKE, J., CONCUR.

LEO M. SPELLACY

JUDGE

N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R.26 (A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also S.Ct.PracR. II, Section 2(A) (1).