STATE OF OHIO, Plaintiff-Appellee v. LEONARD LAMBERT, Defendant-Appellant
C.A. Case No. 15474

COURT OF APPEALS OF OHIO, SECOND APPELLATE DISTRICT, MONTGOMERY COUNTY

1996 Ohio App. LEXIS 3274

August 2, 1996, Rendered

PRIOR HISTORY: [*1]  T.C. Case No. 95-CR-1971.

DISPOSITION: The judgment of the trial court is Affirmed.

CASE SUMMARY:

PROCEDURAL POSTURE: Defendant appealed his conviction and sentence in the Montgomery County Common Pleas Court (Ohio) for attempted murder, vandalism, and of a specification to the vandalism charge in violation of *Ohio Rev. Code Ann. § 2941.143*.

OVERVIEW: Defendant allegedly tried to kill the victim by repeatedly ramming his car into her home. He rammed his car into the front of the house where she usually sat watching television in the living room. Defendant contended he knew the victim was not sitting in the living room and that he was intoxicated. The court affirmed defendant's conviction. The court found, inter alia, that (1) the crime of attempted murder included the element that a person acted with the specific intent to kill his victim; (2) the jury could easily have found sufficient evidence to infer the intent to kill the victim from the amount and position of the damage to the house, and from he threats to kill the victim; (3) the failure to object to a jury instruction constituted a waiver of any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would have been otherwise; (4) the trial court's failure to define one of the terms used in setting out an element of the offense charge did not constitute plain error; and (5) failure to object to a conviction on the basis of allied offenses of similar import constituted waiver of the error.

OUTCOME: The court affirmed the judgment of the trial court.

LexisNexis (TM) HEADNOTES - Core Concepts:

Criminal Law & Procedure: Appeals: Standards of Review: Standards Generally
Criminal Law & Procedure: Appeals: Standards of Review: Substantial Evidence Review
[HN1] An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

Criminal Law & Procedure: Criminal Offenses: Homicide: Murder
Criminal Law & Procedure: Criminal Offenses: Inchoate Crimes: Attempts
Criminal Law & Procedure: Scienter: General Intent
[HN2] Attempted murder is a specific intent crime which prohibits a person from purposely engaging in conduct which, if successful, would constitute the offense of murder. In other words, the crime of attempted murder includes the element that a person acted with the specific intent to kill his victim. However, intent to commit an offense is not something easily proven by direct evidence. It must ordinarily be proven by reference to the surrounding facts and circumstances. The element of purpose may be inferred where the natural and probable consequence of a defendant's act is to produce death.

Criminal Law & Procedure: Appeals: Standards of Review: Plain Error
[HN3] Under Ohio R. Crim. P. 52, plain error or defects affecting substantial rights in a criminal case may be noticed even though not brought to the trial court's attention. Notice of plain error is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.

Criminal Law & Procedure: Appeals: Reviewability: Waiver
Criminal Law & Procedure: Appeals: Standards of Review: Plain Error
[HN4] The failure to object to a jury instruction constitutes a waiver of any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would have been otherwise.

Criminal Law & Procedure: Jury Instructions
Criminal Law & Procedure: Appeals: Standards of Review: Plain Error
[HN5] A trial court's failure to define one of the terms used in setting out an element of the offense charge did not constitute plain error.

Criminal Law & Procedure: Scienter: Specific Intent
[HN6] *Ohio Rev. Code Ann. § 2901.22(A)* provides a person acts purposely when it is his specific intention to cause a certain result.

Criminal Law & Procedure: Criminal Offenses: Inchoate Crimes: Attempts
[HN7] "Attempt" is defined in *Ohio Rev. Code Ann. § 2923.02(A)* as: No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct which, if successful, would constitute or result in the offense.

Criminal Law & Procedure: Appeals: Reviewability: Waiver
[HN8] Failure to object to a conviction on the basis of allied offenses of similar import constitutes waiver of the error.

Criminal Law & Procedure: Sentencing: Merger
[HN9] The allied offenses statute, Ohio Rev. Code. Ann. § 2941.25(A), (B), prohibits multiple convictions: Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but defendant may be convicted of only one. Where defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and defendant may be convicted of all of them.

Criminal Law & Procedure: Sentencing: Merger
[HN10] In order to determine whether defendant has been charged with allied offenses of similar import, The courts look to a two-part test: In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step. In the second step, defendant's conduct is reviewed to determine whether he can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, defendant may be convicted of both offenses. Under the first step, in determining whether the elements of two offenses correspond to such a degree that the commission of one offense will result in commission of the other, the elements of the offenses are not to be viewed abstractly, but are to be viewed with reference to the facts of the particular case. The first step requires the court to examine the facts of the alleged crimes in light of the statutory elements to see if the commission of one crime will result in the commission of the other. For instance, even though the elements of the crimes are not the same, under certain circumstances, the commission of the first offense may result in the commission of the second.

Criminal Law & Procedure: Sentencing: Merger
[HN11] Once a court has determined that the elements of two charges correspond, when placed in context of the facts of the particular case, under the second step of the two-part test to determine whether defendant has been charges with allied offenses of similar import, the court examines whether the crimes were committed with separate conduct or a separate animus. If the court finds that the crimes were committed with separate conduct or a separate animus, defendant can be convicted of both offenses. Only if the same conduct supports both offenses or if the court finds that defendant had a single animus for both offenses, are the offenses found to be allied offenses of similar import.

COUNSEL: MATHIAS H. HECK, JR., Prosecuting Attorney, By: BRIAN R. McHENRY, Assistant Prosecuting Attorney, Suite 315, Appellate Division, 41 North Perry Street, Dayton, Ohio 45402, Atty. Reg. # 0065876, Attorneys for Plaintiff-Appellee.

VICTOR A. HODGE, 367 W. Second Street, Suite 110, Dayton, Ohio 45402, Atty. Reg. # 0007298, Attorney for Defendant-Appellant.

JUDGES: BROGAN, P.J. WOLFF, J., and YOUNG, J., concur.

OPINIONBY: BROGAN

OPINION: OPINION

BROGAN, P.J.

Leonard Lambert appeals from his conviction in the Montgomery County Common Pleas Court of attempted murder, vandalism, and of a specification to the vandalism charge of a violation of *R.C. 2941.143*.

  In 1989, appellant and his wife Geraldine Lambert divorced after 31 1/2 years of marriage. After their

divorce, Geraldine Lambert moved into a house at 835 Fitchland, in Vandalia, Ohio, with her sister Sharon Ray. When Geraldine Lambert moved in with Sharon Ray, Geraldine brought several possessions that she was awarded in her divorce. In 1990, Leonard Lambert reconciled with Geraldine Lambert and moved in with her and Sharon Ray. In 1993 Geraldine Lambert[*2] was diagnosed with cancer and she died in September of 1994. After having been sober for the four years he lived with Geraldine and Sharon Ray, Leonard Lambert resumed the life of an alcoholic the day Geraldine Lambert was buried. About one month after Geraldine died, Sharon Ray asked Leonard Lambert to move out of her house.

On June 20, 1995, Appellant testified he was at the Roundup Bar drinking gin and orange juice for four or five hours. (Tr. 147). At approximately 7:30 p.m. Lambert called Ms. Ray and asked her to return his furniture that he had left at the house when he was asked to move. During the phone conversation Lambert repeatedly told Sharon Ray "you're gonna die with me." A tape of this conversation was introduced in evidence and played for the jury.

After the call, Lambert drove his car to Sharon Ray's home. Approaching the house Lambert testified that he saw silhouettes of people on the back patio of that address. Further, Lambert testified that while approaching 835 Fitchland, he looked through the front picture window and saw that the only light on in the house was the kitchen light and that the television was not on. Mr. Lambert then drove his car into the front[*3] of the house at 835 Fitchland.

At approximately the same time that Lambert was approaching 835 Fitchland, Nancy Walton, Sharon Ray's daughter was also approaching that address in her car. Walton testified that she saw Lambert pull in the driveway of her mother's home and kept traveling until his car hit the house. Walton testified that she then watched Lambert repeat the process of running his car into her mother's house two more times.

After Lambert rammed his car into the home the third time, Walter Staup, a neighbor came across Fitchland and began yelling at Lambert. Mr. Lambert then pulled his car parallel to the house at 835 Fitchland. Staup testified that Lambert got out of his car and began yelling back at Staup, while pounding a closed buck knife on the sun roof of his car, "Come on, I will kill you too if you get in the way." Staup testified that Lambert then got back in his car and left the scene.

Vandalia Police Officer Larry Smith saw Mr. Lambert traveling southbound on Dixie Drive in his car. Smith then turned his patrol car around and began following Lambert. Lambert pulled his car into the Ameristop gas station at the corner of Dixie and Little York and parked. Officer[*4] Smith pulled in behind Mr. Lambert who was getting out of his car. Id. Officer Smith testified that Mr. Lambert put his hands in the air and said, "You got me, you got me." (Tr. 100). Mr. Lambert was then placed in handcuffs and patted down by Officer Smith who found a buck knife in his right front pants pocket. Smith testified that while enroute to the police station, Lambert told Officer Smith that, "I meant to kill the fucking bitch and her boyfriend. They got my furniture and they got my dog." (Tr. 102). Further, Smith testified that Lambert said, "It ain't over. When I get out, I'm going to kill her and myself," and, "I'm going to take her out with me. Take it to the bank and she knows it." (Tr. 104). Officer Smith also testified that he smelled an odor of alcohol on Mr. Lambert's breath, but didn't think Mr. Lambert had the signs of being drunk. (Tr. 105-106).

Public safety specialist John Starr fingerprinted Mr. Lambert at the Vandalia Police Station. (Tr. 109). Starr testified that Mr. Lambert told him that his gas pedal stuck and next time he would take her with him. (Tr. 109).

In his defense, Lambert testified that he didn't remember calling Sharon Lambert and threatening[*5] her or driving his car into her house. (Tr. 142). He testified he did not intend to kill Ms. Ray. He said he just wanted to hurt her feelings. (Tr. 143).

In appellant's first assignment of error he contends the evidence presented by the State was insufficient to establish that he attempted to kill Sharon Ray. Appellant notes that he testified that he saw people on the back patio of Sharon Ray's home just prior to the incident and that he saw no lights or television on in the living room prior to his ramming the house with his car. He also notes that he was intoxicated at the time of the crime.

The State counters that there was sufficient evidence to support the jury's verdict on the attempted murder charge because the appellant rammed his car into the area of Sharon Ray's living room where she usually sat in a chaise chair watching television at that time of the evening.

The State argues that it presented evidence that the appellant was well aware of Ms. Ray's habit of watching television while seated near the front of her home between 7:00 and 8:00 p.m. every evening.

The State also points to the photographs which it introduced in evidence which graphically depicts the damage[*6] caused by defendant's car to the front of

Sharon Ray's home. The impact caused the chaise chair to be pushed several feet from the living room walls. (Tr. 23). The State also points out that the appellant's statements after the incident were strongly corroborative of the appellant's purpose to kill Ms. Ray.

The Ohio Supreme Court has addressed our function in reviewing an insufficiency of evidence assignment in *State v. Jenks (1991), 61 Ohio St. 3d 259, 574 N.E.2d 492*. In Jenks, the Supreme Court held that:

[HN1] An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

Id. at paragraph two of the syllabus.

[HN2] Attempted murder is a specific intent crime which prohibits a person from purposely engaging in conduct which, if successful, [*7] would constitute the offense of murder. *State v. Kidder (1987), 32 Ohio St. 3d 279, 286, 513 N.E.2d 311, State v. Fox (1981), 68 Ohio St. 2d 53, 55, 428 N.E.2d 410*. In other words, the crime of attempted murder includes the element that a person acted with the specific intent to kill his victim. *State v. Karszewski, 1994 Ohio App. LEXIS 4906* (November 4, 1994), Lucas App. L-93-183, unreported.

"However, intent to commit an offense is not something easily proven by direct evidence. It must ordinarily be proven by reference to the surrounding facts and circumstances." *State v. Clark (1995), 101 Ohio App. 3d 389, 405, 655 N.E.2d 795*. The element of purpose may be inferred where the natural and probable consequence of a defendant's act is to produce death. *State v. Robinson (1954), 161 Ohio St. 213, 118 N.E.2d 517*.

We have carefully reviewed the evidence and have examined the photographs of the damage caused to the front of Ms. Ray's home. The photos graphically depict significant damage to the area of Ms. Ray's home near where she usually sat in a chair. The photos depict that the appellant's car was a large vehicle which crushed the brick facade of Ms. Ray's[*8] home. In short, the evidence was sufficient to support the jury's verdict of attempted murder. This assignment of error is overruled.

In his second assignment, appellant contends that the trial court committed prejudicial error in failing to instruct the jury on the element of "purposely" for the charge of attempted murder.

The trial court instructed the jury as follows:

Murder is causing the death of another purposely. In this case, before you can find the defendant guilty, you must find beyond a reasonable doubt that on the twentieth day of June, 1995, in Montgomery County, Ohio, the defendant purposely attempted to cause the death of Sharon Kay Ray. There must have been a specific purpose to cause the death of Sharon Kay Ray existing in the mind of the defendant at the time of the attempt. A criminal attempt is when one purposely does anything which is an act constituting a substantial step in a course of conduct planned to culminate in the commission of a crime. To constitute a substantial step, conduct must be strongly corroborative of the actor's criminal purpose. Since you cannot look into the mind of another, knowledge is determined from all the facts and circumstances[*9] in evidence. You will determine from these facts and circumstances whether there existed at the time in the mind of the defendant an awareness of the probability that his acts, if successful, would cause the death of Sharon Kay Ray. (Emphasis ours).

This jury charge was reduced to writing and was given to the jury during the deliberations. No objections were made to any of the trial court's instructions.

Appellant now contends the trial court committed error in failing to adequately define the culpability state of "purposely" and in improperly including the culpability state of "knowingly" in the attempt instruction.

[HN3] Under Crim. R. 52, plain error or defects affecting substantial rights in a criminal case may be noticed even though not brought to the trial court's attention. Notice of plain error is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *State v. Long (1978), 53 Ohio St. 2d 91, 372 N.E.2d 804*.

[HN4] The failure to object to a jury instruction constitutes a waiver of any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would have been otherwise. [*10] *State v. Underwood (1983), 3 Ohio St. 3d 12, 444 N.E.2d 1332*.

In *State v. Manley (1994), 71 Ohio St. 3d 342, 643 N.E.2d 1107,* the Ohio Supreme Court held that [HN5] a trial court's failure to define "one of the terms used in setting out an element of the offense charge" did not constitute plain error.

In this case the trial court informed the jury the State was required to prove that the defendant purposely attempted to cause the death of Sharon Ray. The court also told the jury the defendant had to have a specific purpose to cause the death of Ms. Ray. The court did not define purposely as it is defined at *R.C. 2901.22(A)*. That [HN6] statute provides "a person acts purposely when it is his specific intention to cause a certain result." The court used the redundant term "purpose" rather than the statutory word intention.

The Ohio Supreme Court has admonished trial courts to limit their definitions where possible to those provided by the legislature to avoid confusion and unnecessary appellate challenges. *State v. Williams (1988), 38 Ohio St. 3d 346, 528 N.E.2d 910.* We do not believe the instruction of "purposely" as given by the trial judge likely misled the jury.

[HN7] "Attempt" [*11] is defined in *R.C. 2923.02(A)* as: "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct which, if successful, would constitute or result in the offense."

Since purpose is the culpability state required for the commission of murder the trial court erred when it instructed the jury that it was to determine whether the "defendant was aware of the probability that his acts would cause the death of Sharon Kay Ray." This instruction defines the statutory term "knowingly" as opposed to the higher culpability state of purposely.

Although we agree with the appellant that the trial court erred in including the wrong culpability state in the attempt instruction, we cannot say that the outcome of the trial would have clearly been otherwise but for this error. See, *State v. Underwood, supra.* This second assignment of error is overruled.

In his third assignment of error, appellant erred in sentencing him to consecutive terms of incarceration as a result of appellant's conviction of vandalism as well as attempted murder.

Appellant contends that the vandalism conviction under the facts of this [*12]case is an allied offense of a similar import and the two offenses should be considered to merge. In other words, appellant argues that since the attempted murder was carried out by means of the vandalism, the two offenses should merge.

The record fails to demonstrate that counsel interposed an objection to the appellant's conviction of these alleged "allied" offenses. In *State v. Comen (1990), 50 Ohio St. 3d 206, 211, 553 N.E.2d 640,* the Supreme Court held that [HN8] failure to object to a conviction on the basis of allied offenses of similar import constitutes waiver of the error. Thus, we analyze Burch's Second Assignment of Error under the plain error doctrine. Crim.R.52(B).

[HN9] The allied offenses statute, *R.C. 2941.25*, prohibits multiple convictions:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one. (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or[*13] with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

[HN10] In order to determine whether a defendant has been charged with allied offenses of similar import, we look to the two-part test set forth in *Newark v. Vazirani (1990), 48 Ohio St. 3d 81, 549 N.E.2d 520,* syllabus, in which the Supreme Court held:

In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step. In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses.

Under the first step, this court has "held that in determining whether the elements of two offenses correspond to such a degree that the commission of one offense will result in commission of[*14] the other, the elements of the offenses should not be viewed abstractly, but should be viewed with reference to the facts of the particular case." *State v. Byrd (1993), 86 Ohio App. 3d 679, 680, 621 N.E.2d 781,* citing *Dayton v. McLaughlin (1988), 50 Ohio App. 3d 69, 552 N.E.2d 965,* paragraph five of the syllabus; see also, *State v. Fields (1994), 97 Ohio App. 3d 337, 345, 646 N.E.2d 866,* ("The first step requires the court to examine the facts of the alleged crimes in light of the statutory elements to see if the commission of one crime will result in the commission of the other. * * * For instance, even though the elements

of the crimes are not the same, under certain circumstances, the commission of the [first offense] may result in the commission of [the second offense].").

[HN11] Once the court has determined that the elements correspond, when placed in context of the facts of the particular case, under the second step, the court examines whether the crimes were committed with separate conduct or a separate animus. If the court finds that the crimes were committed with separate conduct or a separate animus, the defendant can be convicted of both offenses. Only if the[*15] same conduct supports both offenses or if the court finds that the defendant had a single animus for both offenses, are the offenses found to be allied offenses of similar import.

Applying the holding of *Newark v. Vazirani, supra,* to the crimes with which the appellant was charged, we find that they are not allied offenses of a similar import. It is clear that the distinct elements of aggravated murder and vandalism do not "correspond to such a degree that the commission of one crime will result in the commission of the other." The crime of attempted murder can be committed without causing serious physical harm to an occupied structure. The elements of these offenses also do not correspond in the context of the facts of this case. The third assignment of error is also overruled.

The judgment of the trial court is Affirmed.

WOLFF, J., and YOUNG, J., concur.