# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

---

Edward Smith,
      Petitioner


      vs                        Case No. 1:01cv814
                                (Dlott, J.; Perelman, M.J

Anthony Brigano,
      Respondent

---

## REPORT AND RECOMMENDATION

---

      Petitioner, an inmate in state custody at the Warren Correctional Institution in Lebanon, Ohio, brings this pro se action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the petition, respondent's answer, as supplemented,  and petitioner's motion for a "writ of mandate and writ of mandamus for reopening direct appeal." (Docs. 1, 5, 18, 11).

      The 1997 term of the Hamilton County, Ohio, grand jury returned an indictment charging petitioner with one count of murder as defined in Ohio Rev. Code § 2903.02(A) with a firearm specification. (Doc. 5, Ex. 1). A jury found petitioner guilty as charged.  (*Id.,* Ex. 5).  On October 16, 1998, the Ohio Court of Appeals reversed the judgment of the trial court based on prosecutorial misconduct and remanded the case to the trial court for further proceedings.  (*Id.*, Ex. 9). On March 3, 1999, the Ohio Supreme Court denied the State leave to appeal and dismissed the appeal as not involving any substantial constitutional question.  (*Id.*, Ex. 12).

      On April 8, 1999, petitioner moved to dismiss the case on double jeopardy grounds.  (*Id.*, Ex. 13). On April 29, 1999, the trial court denied the motion.  (*Id.,* Ex. 15).

At petitioner's second trial held during August 1999 the jury again returned a guilty verdict. (Doc. 5 at 4; Ex. 23). The Court sentenced petitioner to consecutive terms of fifteen (15) years to life for the murder conviction and three years actual incarceration for the firearm specification. (Doc. 5, Ex. 16).

On August 25, 1999, petitioner through new counsel filed a motion for a new trial alleging that "irreconcilable differences" between petitioner and trial counsel precluded a fair trial. (Doc. 5, Ex. 17). On September 13, 1999, the trial court denied the motion. (*Id.,* Ex. 18).

With the assistance of yet another new counsel, petitioner filed a timely appeal to the Ohio Court of Appeals, raising the following assignments of error:

> 1. The trial court erred in not allowing appellant's counsel to withdraw when counsel explained that irreconcilable differences between counsel and appellant existed.
>
> 2. The trial court erred in not granting appellant a continuance to obtain new counsel.
>
> 3. The trial court erred in allowing the photo line-up to be introduced as evidence.
>
> 4. The trial court erred in retrying appellant's case after it was remanded. The retrial constituted Double Jeopardy.
>
> 5. The jury verdict was against the manifest weight of the evidence.

(Doc. 5, Exs. 19, 21). On November 3, 2000, the Ohio Court of Appeals overruled each assignment of error and affirmed the judgment of the trial court. (*Id.,* Ex. 23). The court made the following findings of fact concerning the underlying offense, which are entitled to a presumption of correctness:[1]

---

[1]28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Petitioner failed to rebut

Eugene Jenkins was found in his truck on the morning of December 27, 1996, in Lincoln Heights, Ohio. Earlier that morning , he had been seen driving in his truck with a passenger who had a beard and wore glasses and a cap. The witness who saw the truck stated that Jenkins and his passenger appeared to be arguing. Jenkins's son also testified at trial that he saw Smith sitting in his own truck outside of his father's barber shop on the morning of the murder.

Michelle Thomas was walking to a friend's house in Lincoln Heights that morning. She saw a man come around the corner of a nearby building. He looked anxious as he ran past her. She stated that she got a good look at his face, describing him as over forty years old, with a full beard that was black mixed with gray, and wearing glasses and a cap. After she rounded the corner, she saw Jenkins's truck parked on the street with someone in the vehicle. She and her friend called the police a short time later about the person in the truck. An officer arrived at the scene and discovered Jenkins. He was dead from two gunshots fired at close range. The officer called for an ambulance and for other assistance.

There were no indications of a struggle in the truck. The police examined the passenger door and dashboard for fingerprints, but could not find any usable prints. Underneath the victim was a set of keys. The police later found that one of the keys fit the ignition of a truck owned by Smith. Outside the truck, on the ground on the passenger side, the police found a small cassette tape. Smith's voice was on the tape, but Jenkins's was not.

. . .

---

the court's findings with clear and convincing evidence.

> . . . At trial, Spikner [petitioner's employee] testified that Smith frequently carried a small tape recorder with him to record conversations about his business transactions.
>
> The police put together a photographic lineup that included Smith, whom they suspected of being involved in the murder, and others. They showed the lineup to Thomas, who identified Smith as the person she had seen running past her. Smith was later apprehended at an automobile pawn lot. He had frequently pawned automobiles there when he was low on cash in his construction business. On this occasion, he had attempted to sell two vehicles to the owner of the business, stating that he intended to leave town.

(*Id.* at 2-4).

Petitioner filed a pro se appeal in the Supreme Court of Ohio, raising the same issues he presented to the Ohio Court of Appeals. (*Id.,* Ex. 24). On March 7, 2001, the Supreme Court of Ohio denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. (*Id.,* Ex. 26).

On February 8, 2001, petitioner filed a pro se application to reopen his appeal pursuant to Ohio App. R. 26(B) asserting that his appellate counsel was ineffective for failing to raise the following issues:

> 1. The trial court abused it's discretion and committed plain error pursuant to Ohio Criminal Rule 52(B) by allowing testimony of witnesses which had violated the appellant's constitutional rights under the Fourth Amendment to the United States Constitution and the Ohio Constitution Article I, §14.
>
> 2. The trial court abused its discretion in denying the appellant's motion for a new trial violating the appellant's constitutional right to a fair trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, Article I, §§ Ten and Sixteen of the

4

Ohio Constitution.

> 3.  The trial court committed reversible error by
> instructing the trial jury on the culpable mental state
> (mens rea) of the element of purpose/intent of the
> criminal offense of murder, R.C. 2903.02, in violation of
> the appellant's Fourteenth Amendment Rights under the
> United States Constitution, Ohio Constitution, Article I,
> §§10 & 16, shifting the burden of proof to the appellant,
> being plain error pursuant to Ohio Criminal Rule 52(B).

(Doc. 5, Ex. 27).  On July 31, 2001, the Ohio Court of Appeals denied the
application  because it was filed seven days late.[2] (*Id.*, Ex. 30).  Petitioner pursued
an appeal to the Ohio Supreme Court, raising essentially the same claims he did in
his appeal to the Ohio Court of Appeals with the following addition:

> 1.  The appellant has been denied both due process/due
> course of law and equal protection of law in violation of
> both the Ohio and United States Constitution by the First
> District Court of Appeals' judgment denying the
> appellant's application for reopening and this Court's
> ruling in State ex. rel. Tyler v. Alexander, 52 Ohio St. 3d
> 84.

(Doc. 5, Ex. 31). On October 24, 2001, the Ohio Supreme Court denied the appeal
as not involving a constitutional question.  (Doc. 5, Ex. 33).

   Petitioner filed the instant petition for a writ of habeas corpus raising the
following grounds for relief, which are quoted verbatim:

> **Ground One:** Trial court error in not allowing appellant's
> counsel to withdraw when counsel explained that
> irreconcilable differences between counsel and appellant

---

[2]Petitioner also filed an application for reconsideration of the court's denial of his
application for reopening, which was also denied, and an appeal of that denial to the Ohio
Supreme Court.  (Doc. 5, Exs. 34, 35, 36). The Ohio Supreme Court declined jurisdiction. (Doc.
5, Ex. 38).

existed.

**Ground Two:** The trial court erred in not granting the appellant a continuance to obtain new counsel.

**Ground Three:** The trial court erred in allowing the photo line-up to be introduced as evidence.

**Ground Four:** The trial court erred in retrying appellant's case after it was remanded.  The retrial constituted double jeopardy.

**Ground Five:** The jury verdict was against the manifest weight of the evidence.

**Ground Six:** The appellant/petitioner has been denied both due process due course of law and equal protection of law in violation of both the Ohio and United States Constitutions by the First District Court of Appeals judgment denying the appellant's application for reopening and this court's ruling in: State ex rel. Tyler v. Alexander, 52 Ohio St. 3d 84.

**Ground Seven:** The trial court abused its' discretion and committed plain error pursuant to Ohio Criminal Rule 52 (B) by allowing testimony of witnesses which had violated the appellant's constitutional rights under the Fourth Amendment to the United States Constitution, and Article I, § 14 of the Ohio Constitution.

**Ground Eight:** The trial court abused its discretion in denying the appellant's motion for a new trial violating the appellant's constitutional right to a fair trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, Article I, §§10 and 16 of the Ohio Constitution.

**Ground Nine:** The trial court committed reversible error

6

by instructing the trial jury on the culpable mental state (mens rea) of the element of purpose/intent of the criminal offense of murder, R.C. 2903.02, in violation of the appellant's Fourteenth Amendment rights under the United States Constitution, Article I, §§10 & 16 of the Ohio Constitution, shifting the burden of proof to the appellant, being plain error pursuant to Ohio Criminal Rule 52(B).

**Ground Ten:** The appellant was denied effective assistance of counsel (on appeal) . . . .[3]

(Doc. 1).

In his first and second grounds for relief, petitioner contends that the trial court's failure to permit his counsel to withdraw and then continue the case until new counsel could be obtained, violated his Sixth Amendment right to counsel and his right to due process of law under the Fourteenth Amendment.

Under the standard established by the Antiterrorism and Effective Death Penalty Act (AEDPA), codified principally at 28 U.S.C. § 2254 (d), petitioner is not entitled to federal habeas corpus relief, unless the state court's adjudication of his claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998). A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court under § 2254(d)(1) if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams,* 529 U.S. at 405-06 (O'Connor, J.); *Harris,* 212 F.3d

---

[3]Respondent has tacitly conceded that the petition was timely filed.

at 942.

An "unreasonable application" of Supreme Court precedent occurs (1) if the state court identifies the correct legal standard but unreasonably applies it to the facts of the case, or (2) if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 529 U.S. at 407-08 (O'Connor, J.). A federal habeas corpus court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411 (O'Connor, J.); *see also McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000); *Harris,* 212 F.3d at 942. The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all agree that the state court's application was unreasonable. *Williams,* 529 U.S. at 409-10 (O'Connor, J.); *see also Washington v. Hofbauer,* 228 F.3d 689, 698 (6th Cir. 2000); *Harris,* 212 F.3d at 942-43. Moreover, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee,* 229 F.3d at 510, 512 (citing *Williams,* 529 U.S. at 412).

When a state court fails to address the constitutional issues raised the federal court conducts a de novo review, instead of applying the AEDPA standard of review which applies only to cases "adjudicated on the merits in state court." *Maples v. Stegall,* 340 F.3d 433, 436-437 (6th Cir. 2003) (finding that in *Wiggins v. Smith,* 123 S.Ct. 2527 (2003), Supreme Court reviewed portion of claim not analyzed by state court de novo, without deferring to the state court or applying AEDPA's standard of reasonableness); *see Newton v. Million,* 349 F.3d 873, 877 (6th Cir. 2003); *Davis v. Secretary for the Dep't of Corrections,* 341 F.3d 1310, 1312 (11th Cir. 2003).

The Sixth and Fourteenth Amendments guarantee a criminal defendant the right to assistance of counsel before he can be validly convicted and punished by imprisonment. *See Faretta v. California,* 422 U.S. 806, 807 & n.1 (1975) and cases cited therein.

The Sixth and Fourteenth Amendments guarantee the accused a fair opportunity to secure counsel of his own choice, but that right is not absolute. *Morris v. Slappy,* 461 U.S. 1, 11-12 (1983); *Chandler v. Fretag*, 348 U.S. 3, 10 (1954); *Powell v.*

*Alabama,* 287 U.S. 45, 53 (1932); *see Wilson v. Mintzes*, 761 F.2d 275, 278-280 (6th Cir. 1985) and cases cited therein; *see also United States v. Iles,* 906 F.2d 1122, 1130 (6th Cir. 1990). The public's interest in the "prompt and efficient administration of justice" must be balanced against the defendant's right to counsel of choice. *Wilson,* 761 F.2d at 280; *Linton v. Perini,* 656 F.2d 207, 211-212 (6th Cir. 1981), *cert. denied,* 454 U.S. 1162 (1982); *Maynard v. Meachum*, 545 F.2d 273, 278 (1st Cir. 1976). Accordingly, the right is only a qualified one and the opportunity guaranteed is only a "fair" one. *Sampley v. Attorney General of North Carolina,* 786 F.2d 610, 613 (4th Cir.), *cert. denied,* 478 U.S. 1008 (1986).

Petitioner has no constitutional right to determine the time "at which he is willing to be tried by simply showing up without counsel, or with allegedly unsatisfactory counsel, whenever his case is called for trial," or by complaining "that counsel then retained or assigned is not presently 'counsel of choice.'" *Sampley,* 786 F.2d at 612 (citing *Ungar v. Sarafite,* 376 U.S. 575, 589-590 (1964) and *Morris v. Slappy,* 461 U.S. 1). When a defendant requests a continuance on these bases, the Court must determine "whether this results from the lack of a fair opportunity to secure counsel or rather from defendant's unjustifiable failure to avail himself of an opportunity fairly given." *Sampley,* 786 F.2d at 613.

> The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. . . . There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.

*Ungar,* 376 U.S. at 589-590 (citations omitted); *see Morris v. Slappy,* 461 U.S. 1, 11-12 (1983). For the denial of a continuance to amount to a constitutional violation, defendant's request for delay must be justifiable and the court's insistence on expediency unreasonable and arbitrary. *Id.; United States v. Moreno,* 933 F.2d 362, 371 (6th Cir.), *cert. denied,* 502 U.S. 895 (1991).

"When sixth amendment rights to counsel come into conflict with the trial

judge's discretionary power to deny continuances, courts apply a balancing of several factors to determine if the trial judge's action was fair and reasonable." *United States v. Leavitt*, 608 F.2d 1290, 1293 (9th Cir. 1979).

Some of the factors to be considered by the court in determining whether a continuance was properly denied include the length of the requested delay; whether other continuances had been requested and granted; inconvenience to litigants, witnesses, counsel and the court; whether the delay was for legitimate reasons or whether it was "dilatory, purposeful or contrived;" whether the petitioner contributed to the circumstances giving rise to the request; the availability of competent counsel prepared to try the case; the complexity of the case, and whether a denial of the continuance would prejudice the defendant. *United States v. Burton,* 584 F.2d 485, 490-491 (D.C. Cir. 1978), *cert. denied*, 439 U.S. 1069 (1979); *accord Wilson,* 761 F.2d at 281; *see Seaton v. Jabe,* No. 91-1903, 1993 WL 1291, at \*\*5 (6th Cir. January 5, 1993), *cert. denied*, 508 U.S. 943, *and cert. denied,* 509 U.S. 911 (1993); *Moreno,* 933 F.2d at 371; *United States v. Kelm*, 827 F.2d 1319, 1322 & n.2 (9th Cir. 1987); *Leavitt*, 608 F.2d at 1293; *but cf. Linton v. Perini,* 656 F.2d 207, 211-212 (6th Cir. 1981) (no showing of prejudice required). How these factors are balanced to obtain a just result depends on the circumstances of each case. *Burton,* 584 F.2d at 491-492. An extended delay and significant inconvenience may be tolerated when "defendant's only counsel is suddenly lost by some unforseen circumstance in a very complex case." *Id.* Yet, a minor delay may be too much when defendant wishes to retain new counsel in a simple case where he had already retained three others. *Id.* The propriety of the state court ruling must be assessed in reference to the reasons provided at the time the continuance is requested. *Ungar,* 376 U.S. at 589.

When defense counsel seeks to withdraw or petitioner seeks substitution of counsel, petitioner must show good cause "such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict with his attorney." *Wilson,* 761 F.2d at 280; *see Metcalf v. Bock,* No. 00-10361, 2002 WL 31749157, at \*4 (E.D. Mich. Dec. 5, 2002). In reviewing the denial of such a motion, the adequacy of the trial court's inquiry into the matter must also be assessed by the reviewing court. *Metcalf,* 2002 WL 31749157, at \*4 (citing *United States v. Mack,* 258 F.3d 548, 556 (6th Cir. 2001)).

On the day of trial, petitioner was permitted to address the court at length with his complaint that his counsel had not pursued either an interlocutory appeal in state court or a federal action concerning the trial court's denial of his motion to dismiss on

double jeopardy grounds. (Doc. 19, Ex. 39, Tr. 41-45). Petitioner stated that he was under the impression that his counsel was pursuing this course of action, but only a few days before trial learned that in fact the case was going to trial. (*Id.*, Tr. 45). Counsel indicated that both financial constraints and concerns about the legal viability of this tack caused him to decline to further litigate the double jeopardy issue before trial. (*Id.*, Tr. 48). He expressed concern about his effectiveness in representing petitioner for this reason. (*Id.*, Tr. 49). The trial judge stated that regardless who was representing petitioner, she would not stay the criminal proceedings so that petitioner could pursue either state or federal court review of her ruling on the double jeopardy issue. (*Id.*, Tr. 50). Defense counsel then asked to withdraw. (*Id.*). The Court questioned defense counsel as to whether he was prepared to try the case. (*Id.*, Tr. 51). He indicated that he had tried it once before and had pursued the state court appeals and was therefore prepared. (*Id.*, Tr. 52). The trial judge also asked whether the state was ready to proceed and prepared for trial and the prosecutor indicated that he was. (*Id.*).

The trial judge construed petitioner's statements as a request for a continuance and denied the request. (*Id.*, Tr. 126, 132). She first addressed the Sixth Amendment issue. (*Id.*). Acknowledging that there was "some tension" in the attorney-client relationship, the court concluded that "it's not of a magnitude that would jeopardize Mr. Smith's right to effective assistance of counsel." (*Id.*, Tr. 126-128). She found this "especially true give the extensive preparation and professional capability" of counsel. (*Id.*, Tr. 128). In evaluating whether a continuance was justified, the trial judge noted several other factors: 1. that there had been a prior continuance at petitioner's request for trial preparation; 2. that the state's sixteen subpoenaed witnesses were present; 3. that petitioner's concern was first raised at jury selection; 4. that the families and the public had an interest in the prompt resolution of the case; and 5. that the extent of the delay required was uncertain. (*Id.*, Tr. 130-133).

The Ohio Court of Appeals made the following findings of fact, which are entitled to a presumption of correctness, with respect to petitioner's claim:

> This was Smith's second trial for the same offense. The same counsel who had represented him at his first trial was his counsel for the second trial. On the morning that the second trial was to begin, before voir dire of the jury, Smith related to the court his dissatisfaction with counsel.

11

Smith indicated that counsel had previously informed him that, instead of going to trial, counsel wanted to pursue an action in federal court challenging the denial of the motion to dismiss the case on double-jeopardy grounds. Counsel had in fact requested a continuance to pursue the federal action, but the trial court had denied the motion. Smith's counsel then allegedly decided not to pursue the federal action while acting as trial counsel in the state criminal prosecution.  Smith stated that he had not been informed that the trial was going forward, and that he was unprepared for trial.  He also stated his disagreement with counsel's decision not to pursue the federal action.

Counsel responded by stating that he and Smith in fact disagreed on whether to pursue the federal action, and that he did not know if he could effectively represent Smith because of their disagreement. He asserted that he had made Smith aware of the pending trial.  Based on Smith's apparent dissatisfaction with his representation, counsel requested to withdraw. But, in response to questioning from the court,  he stated he was prepared to try the case.

The trial court treated Smith's allegations as a request for a continuance to obtain new counsel, even though Smith had requested a continuance only for the purpose of pursuing a federal challenge to the  denial of the motion to dismiss the charge against him.  Noting that Smith's counsel, who had been retained and not appointed, had represented Smith in the prior trial; that Smith's request for a continuance had come on the morning of trial; that counsel had indicated that he was prepared to try the case; that the state was ready to proceed and had subpoenaed numerous witnesses for the day, and that Smith's reason for dissatisfaction with his counsel had nothing to do with effective representation at the trial, the court overruled Smith's motion for a continuance.

(Doc. 5, Ex. 23 at 6-7).  The Ohio Court of Appeals upheld the trial court's ruling for

these reasons:

> Here, the trial court's decision was based on sound reasoning. Smith had waited until the morning of the trial to make his request. His counsel was the same counsel who had represented him through his first trial, the appeal and the remand. Although Smith indicated dissatisfaction with counsel, he did not question counsel's competence to handle the trial. He merely disagreed with counsel's understandable reluctance to pursue a course of action that he nothing to do with the trial. He did not indicate that he had retained other counsel at that time, and thus he would have required time to find another attorney. Moreover, counsel disputed Smith's claim that he had not been kept apprised of the proceedings. And the state had subpoenaed numerous witnesses and was prepared to start the trial.

> Based on all of these factors, which the trial court explicitly considered, we hold that the court did not err in denying Smith's request to change attorneys. We emphasize that Smith's disagreement with counsel was not, as stated in Smith's brief, related to the approach to be taken or the strategy to be used during the trial. It related instead to the decision not to pursue a federal action based on the earlier denial of the motion to preclude the second trial of Smith on the murder charge. Again contrary to Smith's allegations, the trial court did allow him to explain fully his disagreement with counsel. Smith was allowed to address the court directly, and the court's statement that it would not "hear from him again" was only an indication that it would further communicate with him through his counsel with respect to all other matters.

> Finally, the affidavit that Smith filed, which related to alleged financial problems between him and counsel, contained the allegation that counsel had been neither retained nor appointed and further alleged the existence of

> a potential conflict of interest.  But, the affidavit was not
> presented to the court until *after* the trial as part of a motion
> for a new  trial, so the court could not have considered it in
> deciding whether to grant a continuance before trial.

(*Id.* at 8-9).

This Court concludes that petitioner failed to show good cause for the substitution of counsel.  Although he did have a conflict with his attorney concerning the advisability of filing for review of the trial court's denial of his motion to dismiss, this involved an ancillary matter, unrelated to counsel's trial strategy or counsel's competence to try his case.  There was no evidence that a conflict existed which was "so great that it resulted in a total lack of communication preventing an adequate defense."  *Metcalf*, 2002 WL 31749157, at \*4 (quoting *United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001)).

More importantly for the purpose of this action in habeas corpus, petitioner has failed to demonstrate that he was not provided with a fair opportunity to secure counsel.  Defense counsel had represented him throughout his first trial and the subsequent appeals, and petitioner had years to avail himself of new legal representation if he desired.

In addition, as found by the state appellate court, the trial judge provided ample cogent reasons for denying the continuance.

Although petitioner now argues that counsel was not retained by him, that he had financial difficulties with counsel, that counsel was disloyal, in part because he was "consorting" with the attorney for the victim's family, and that counsel had mislead him into believing that he would not be retried, these issues were not raised pretrial and for that reason cannot be considered in assessing the propriety of the state trial court's ruling. *See Ungar,* 376 U.S. at 589.

Since petitioner's request for delay was not justifiable and the court's insistence on proceeding to trial was reasonable, petitioner has failed to establish a violation of due process or his right to counsel.  Accordingly, the state court's resolution of this issue was neither contrary to  nor involved an unreasonable application of clearly established Federal law nor was it based on an unreasonable assessment of the facts.  Petitioner is, therefore,  not entitled to relief with respect to grounds one and two of the petition.

As his third ground for relief petitioner challenges the pretrial identification procedure as unduly suggestive and unreliable, thereby violating his right to due process.

A conviction in a trial in which there was identification testimony following pretrial identification violates a defendant's constitutional right to due process whenever the pretrial identification procedure is so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Thigpen v. Cory,* 804 F.2d 893, 895 (6th Cir. 1986), *cert. denied,* 482 U.S. 918 (1987) (quoting *Simmons v. United States,* 390 U.S. 377, 384 (1968)); *see also Ledbetter v. Edwards,* 35 F.3d 1062, 1070 (6th Cir. 1994), *cert. denied,* 515 U.S. 1145 (1995). It is the likelihood of misidentification that violates the defendant's due process right. *Neil v. Biggers,* 409 U.S. 188, 198 (1972). In many instances an eyewitness has only briefly observed an alleged perpetrator under poor conditions at a time of extreme stress and excitement, and the due process concern is whether the trustworthiness of the eyewitness's identification testimony can be undermined by the police having engaged in an improperly suggestive pretrial identification process. This being so, the competency of such trial testimony may hinge upon the propriety of that which occurred pretrial. *See Manson v. Brathwaite,* 432 U.S. 98, 112, 114 (1977); *Simmons,* 390 U.S. at 383-84; *Summitt v. Bordenkircher,* 608 F.2d 247, 251 (6th Cir. 1979), *aff'd sub nom. Watkins v. Sowders,* 449 U.S. 341 (1981); *United States v. Russell,* 532 F.2d 1063, 1066 (6th Cir. 1976); *see also Ledbetter,* 35 F.3d at 1070.

A two-step analysis is utilized in deciding whether the accused's right to due process has been violated through the use of a pretrial identification procedure. The court must first consider whether the procedure was unduly suggestive. *Ledbetter,* 35 F.3d at 1070-71 (citing *Thigpen,* 804 F.2d at 895). The defendant bears the burden of proving this element. *Id.* at 1071 (citing *United States v. Hill,* 967 F.2d 226, 230 (6th Cir.), *cert. denied,* 506 U.S. 964 (1992)). If the court finds that the procedure was unduly suggestive, it must next evaluate the "totality of the circumstances" to determine whether the trial identification was nevertheless reliable. *Id.*; *see also Neil,* 409 U.S. at 199-200. The factors to be considered in assessing the reliability of the identification include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness when identifying the defendant; and (5) the length of time between the crime and the identification. *Manson,* 432 U.S. at 114; *Neil,* 409 U.S. at 199-200;

15

*United States v. Gatewood,* 230 F.3d 186, 193 (6th Cir. 2000), *cert. denied,* 534 U.S. 1107 (2002); *Ledbetter,* 35 F.3d at 1071.

Citing the Supreme Court cases of *Neil*, 409 U.S. 188, and *Manson*, 432 U.S. 98, the Ohio Court of Appeals in ruling on petitioner's appeal after his first trial concluded that the identification procedure was not impermissibly suggestive and that the identifications were sufficiently reliable.  (Doc. 5, Ex. 9).  The court addressed petitioner's claim, as follows:

> Smith's challenge to the identification procedure employed below falls into two categories.  First, Smith contends that the photo array was unduly suggestive because Smith's photo was the only one of the six depicting a man in his 40s with a mixed gray and black beard.  We have reviewed the photo array, however, and conclude that it was not impermissible suggestive.

> Smith's second challenge to the identification procedure concerns Thomas's ability to identify the suspect. Specifically, Smith asserts that the identification was unreliable.

> The factors to be considered in assessing the reliability of an identification include the opportunity of the witness to view the suspect, the witness's degree of attention, the accuracy of the witness's prior description of the criminal, the level of certainty demonstrated by the witness at confrontation, and the length of time between the sighting and confrontation.  The record in this matter demonstrates that Thomas had the opportunity to observe Smith as he ran past her in broad daylight.  Furthermore, she provided police with a detailed description that proved to be highly accurate with the possible exception of her underestimation of Smith's height.  Finally, Thomas observed the photo array within hours of the sighting and demonstrated a high degree of certainty when she selected Smith as the person that she had sighted.  Thus, even if we had concluded that the photo array was suggestive, taking

16

> into consideration the totality of the circumstances in this
> case, we cannot say that Thomas's identification was
> unreliable.

(*Id*. at 13-14).  When petitioner raised this same claim on direct appeal after his second trial, the Ohio Court of Appeals referred to its decision on appeal from the first conviction. (Doc. 5, Ex. 23 at 10).  The court determined that since they previously found that the photographic lineup was not unduly suggestive and the same lineup was used in the second trial, the law of the case required a rejection of petitioner's challenge to the pretrial identification procedure. (*Id*.).

   At trial, Michelle Thomas testified that she, along with her two children,  was walking to a friend's house in Lincoln Heights the morning of the crime. (Doc. 19, Ex. 39, Tr. 275). After she heard a noise sounding like a door shutting, she saw a man running around the corner of a nearby building carrying clothes under his arm with a "petrified look" on his face. (*Id.,* Tr. 276, 286).  She kept looking back at him as he was running for a couple of minutes.  (*Id.,* Tr. 277).  She stated that she got a good look at his face, describing him as over forty years old, with a full beard that was black mixed with gray, and wearing glasses, a cap and tan jacket. (*Id.,* Tr. 279, 286, 301, 303). Ms. Thomas testified that she had not seen petitioner before then.  (*Id.,* Tr. 278). After she rounded the corner, she saw the victim's truck parked on the street with someone in the vehicle and then, called the police. (*Id.,* Tr. 282, 284-285).

   About an hour later Ms. Thomas was shown a photo array and picked out the petitioner right away.  (*Id.,* Tr. 287-288, 618-620).  At trial, police officer Stevenson testified that there was only one person in the photo array that had all the characteristics described by Ms. Thomas, specifically, a full mixed gray beard who was older, but some persons in the array had full beards and some were older.  (*Id.,* Tr. 647-649, 664*; see* Tr. 304).  Ms. Thomas testified that police did not advise her that they had a suspect in custody before she identified petitioner nor did the police tell her whom to pick.  (*Id.*, Tr. 287, 320). She testified that she saw petitioner on television only after she had identified him in the array.  (*Id.,* Tr. 307, 321).  Ms. Thomas also testified that before the array was shown to her, the victim's cousins asked her if the man she saw could be petitioner because they suspected him, but Ms. Thomas responded that she did not know.  (*Id.*, Tr. 319).  On cross-examination, Ms. Thomas did not recall whether one of the cousins who questioned her was Mr. Rozier, an FBI agent, who testified at trial for the state, but on redirect she testified that he was not. (*Id.,* Tr. 305-306, 320). Upon petitioner's arrest on the day of the crime, the arresting

17

officer described him as having on a beige jacket, a beard and mustache with salt and pepper hair and noted that he asked her to retrieve his glasses. (*Id.*, Tr. 621).

In his petition, petitioner argues that the photo array was suggestive because Ms. Thomas was "coached" by Mr. Rozier and was previously informed that the police had a suspect in custody. Contrary to petitioner's allegations, there is no evidence on this record that petitioner spoke with Mr. Rozier or was informed that the police had arrested a suspect, so that her pretrial identification of petitioner cannot be considered tainted for these reasons.

Petitioner also argues that the array was suggestive because there was only one photograph that had all the characteristics described by Ms. Thomas, i.e., an older man with full, mixed black and gray beard. Although the Ohio Court of Appeals in reviewing petitioner's first conviction determined that the photo array was not suggestive, there was no explanation for that conclusion. Because the photo array was not submitted as part of the record in this case, this Court might be willing to assume, for purposes of this decision that the array was suggestive. Assuming, arguendo, that it was unduly suggestive, this Court agrees with the determination by the state appellate court that the in-court identification was, nevertheless, reliable, Ms. Thomas having testified that she had ample opportunity to observe the petitioner, doing so for a couple of minutes, and in part, paid particular attention to him because of the strange look on his face.

Upon review of the record, this Court concludes that the Ohio court's rejection of petitioner's challenge to the pretrial identification was based on a reasonable assessment of the facts in light of the record evidence and was neither contrary to nor involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court in the *Neil* and *Manson* decisions. Accordingly, petitioner is not entitled to habeas corpus relief with respect to his third claim.

As his fourth ground for relief, petitioner argues that by retrying him for the murder of Jenkins after the appeals court reversed his first conviction on the ground of prosecutorial misconduct, the trial court violated the Double Jeopardy Clause.

The Ohio Court of Appeals addressed petitioner's double jeopardy claim, as follows:

Smith has been previously tried for the murder of

18

Jenkins and had been convicted. But during closing argument in the first trial, the prosecutor made remarks that Smith considered prejudicial, and counsel for Smith moved for a mistrial, which was denied.

When Smith appealed, this court overturned his conviction, holding that the remarks made by the prosecutor were improper and prejudicial. The case was remanded to the trial court for further proceedings, which led to the conviction now being appealed. Smith claims that because the previous conviction was vacated for prosecutorial misconduct, the state was prohibited from again trying him for the murder of Jenkins. A similar argument has already been rejected by the Supreme Court of Ohio, and we reject it in this case.

If a defendant moves for and obtains a mistrial, the state is generally not barred by double-jeopardy concerns from retrying the defendant, since the trial has been cut short on the motion of the defendant. An exception to this rule has been recognized when the state intentionally goads a defendant into terminating a trial. A mistrial granted because of such prosecutorial misconduct has been held to bar retrial of a defendant. The Supreme Court of Ohio has distinguished this scenario from an appellate reversal of a conviction based on prosecutorial misconduct, which does not bar a retrial. Because, in this case Smith's conviction was overturned on appeal, his retrial was not constitutionally barred.

Smith claims that no principled basis exists for differentiating between a mistrial granted for prosecutorial misconduct and a reversal on appeal for the same misconduct. But the Supreme Court of Ohio has reasoned that, in the case of a mistrial, the defendant is goaded into depriving himself of his opportunity to go to the jury and "'end the dispute then and there with an acquittal.'" If a defendant has the opportunity to take his case to a jury, then

a reversal on appeal will not bar a second trial for the same offense.

(Doc. 5, Ex. 23 at 4-5) [citations omitted].

The Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Constit. amend. V. This guarantee against double jeopardy, made applicable to the states through the Fourteenth Amendment, *Benton v. Maryland,* 395 U.S. 784, 794 (1969) protects against "a second prosecution for the same offense after conviction or acquittal." *Palazzolo v. Gorcyca,* 244 F.3d 512, 516 (6th Cir. ), *cert. denied*, 534 U.S. 828 (2001) (citing *Ohio v. Johnson*, 467 U.S. 493, 498 (1984) and *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)). The Double Jeopardy Clause, in this context, ensures the finality of criminal judgments and also protects a defendant's "right to have his trial completed by a particular tribunal." *United States v. Jorn*, 400 U.S. 470, 484 (1971); *see Arizona v. Washington,* 434 U.S. 497, 503 (1978); *Love v. Morton*, 112 F.3d 131, 133 (3rd Cir. 1997). This bar is not absolute. It is well settled that "reprosecution for the same offense is permitted where the defendant wins a reversal on appeal of a conviction."[4] *United States v. Jorn*, 400 U.S. 470, 484 (1971) (citing *United States v. Ball*, 163 U.S. 662 (1896) and *Green v. United States*, 355 U.S. 184, 189 (1957)); *see Lockhart v. Nelson*, 488 U.S. 33, 38 (1988); *Palazzolo,* 244 F.3d at 516. This exception reflects the judgment that it would be too high a price for society to pay if an accused becomes immune from punishment because of a defect in his proceeding sufficient for reversal. *United States v. DiFrancesco,* 449 U.S. 117, 131 (1980). "[T]he defendant's double jeopardy interests . . . do not go so far as to compel society to so mobilize its decision making resources that it will be prepared to assure the defendant a single proceeding free from harmful governmental or judicial error." *Jorn*, 400 U.S. at 484.

Petitioner argues that retrial should not be allowed because the prosecutor's misconduct goaded him into moving for a mistrial. The trial judge, however, denied the motion for a mistrial and petitioner's trial proceeded to a verdict. Because petitioner was not deprived of his right to have his trial completed by a particular tribunal, retrial is permitted. *See Gully v. Kunzman,* 592 F.2d 283, 289 (6th Cir. ), *cert.*

---

[4]Reprosecution is not permitted under the Double Jeopardy Clause when the reversal on appeal rested on the insufficiency of evidence to support the verdict. *United States v. Scott*, 437 U.S. 82, 90-91 (1978).

*denied,* 442 U.S. 924 (1979); *see also Jorn*, 400 U.S. at 484. Since petitioner's first conviction was reversed on appeal, double jeopardy does not bar his retrial. Petitioner is not entitled to habeas corpus relief with respect to his double jeopardy claim asserted in ground four of his petition.

As his fifth ground for relief, petitioner argues that his murder conviction was against the manifest weight of the evidence.

The Due Process Clause requires the State to prove beyond a reasonable doubt every fact necessary to constitute the charged offense. *In Re Winship,* 397 U.S. 358, 363-64 (1970). When petitioner raises an insufficiency of evidence claim in a petition for a writ of habeas corpus, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis in original). This standard does not require the State to rule out every hypothesis except that of guilt beyond a reasonable doubt. *Id.* at 326. Rather, under this standard, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.*; *see also Walker v. Engle,* 703 F.2d 959, 969-70 (6th Cir.), *cert. denied,* 464 U.S. 951, 962 (1983). It is the jury's responsibility as the trier of fact to resolve conflicts in testimony, to weigh the evidence and to draw reasonable inferences from the evidence. *Jackson,* 443 U.S. at 319. Consequently, the reviewing court is not permitted to make its own subjective determination of guilt or innocence or otherwise substitute its opinion for that of the jury which convicted the petitioner. *Id.* at 318-19 & n.13; *see also York v. Tate,* 858 F.2d 322, 329 (6th Cir. 1988) (per curiam), *cert. denied,* 490 U.S. 1049 (1989).

The Due Process Clause of the Constitution only forbids convictions based on "evidence insufficient to persuade a rational factfinder of guilt beyond a reasonable doubt." *Tibbs v. Florida,* 457 U.S. 31, 45 (1982). As both the United States and Ohio Supreme Courts have recognized, the standard employed when reviewing a claim that a guilty verdict was against the manifest weight of the evidence is both quantitatively and qualitatively different from the standard used when considering a constitutional due process claim based upon the sufficiency of evidence. *See id.* at 44-45*; State v. Thompkins,* 678 N.E.2d 541, 546 (Ohio 1997), *superseded by state constitutional amendment on other grounds in State v. Smith,* 684 N.E.2d 668 (Ohio 1997); *see also*

*State v. Mardis,* 729 N.E.2d 1272, 1274 (Ohio Ct. App. 1999), *motion for delayed appeal denied,* 755 N.E.2d 354 (Ohio 2001). The manifest weight of evidence standard is a broader test than the standard used to evaluate the sufficiency of evidence. *State v. Martin,* 485 N.E.2d 717, 720 (Ohio Ct. App. 1983); *see also State v. Thompson,* 713 N.E.2d 456, 468 (Ohio Ct. App.), *appeal not allowed,* 700 N.E.2d 334 (Ohio 1998); *cf. Tibbs,* 457 U.S. at 41-45. In essence, sufficiency, which implicates due process concerns, tests the adequacy of the evidence in proving the essential elements of the offense charged and presents a question of law, which may not be resolved by the reviewing court through weighing the evidence; in contrast, in determining whether reversal is warranted based on the weight of the evidence, the appellate court sits as a "thirteenth juror" to assess the jury's resolution of conflicting testimony upon review of the entire record, which includes weighing the evidence and all reasonable inferences and considering the credibility of witnesses. *Thompkins,* 678 N.E.2d at 546-47; *see also Tibbs,* 457 U.S. at 41-42; *Martin,* 485 N.E.2d at 720-21. As the Supreme Court explained in *Tibbs,* 457 U.S. at 43, unlike a reversal on the ground of insufficient evidence, a reversal based on the weight of the evidence "does not mean that acquittal was the only proper verdict." Rather, a reversal based on the weight of the evidence "can occur only after the State both has presented sufficient evidence to support conviction and has persuaded the jury to convict. The reversal simply affords the defendant a second opportunity to seek a favorable judgment." *Id.* at 42-43.

A federal court may review a state prisoner's habeas corpus petition only on the ground that the challenged confinement violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *Smith v. Sowders,* 848 F.2d 735, 738 (6th Cir.), *cert. denied,* 488 U.S. 866 (1988). Accordingly, this Court concludes petitioner's claim in ground five of the petition that his murder conviction was against the manifest weight of the evidence does not implicate constitutional concerns, but instead only raises an issue of state law that is not cognizable in this federal habeas corpus action.

To the extent that petitioner is claiming that there was insufficient evidence to support the jury's verdict, this court is precluded from considering such claim due to procedural default in the state courts.

In recognition of the equal obligation of state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between state

22

and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b), (c); *Anderson v. Harless,* 459 U.S. 4, 6 (1982)(per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985). If petitioner fails to do so, he may have waived the unraised claim for purposes of federal habeas corpus review. *See Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989). If because of a procedural default a petitioner can no longer present a claim to a state court, he has waived that claim unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error, or that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S.478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977). "[W]here a constitutional violation has probably resulted in the conviction of one who is actually innocent," the miscarriage of justice standard has been met. *Murray,* 477 U.S. at 496.

A habeas corpus petitioner must present both the factual and legal underpinnings of his claim to the state courts for the claim to be deemed "fairly presented." *Franklin v. Rose,* 811 F.2d 322, 325 (6th Cir. 1987). This requirement means that the petitioner must present his claim to the state courts as a federal constitutional issue and not merely as an issue arising under state law. *Id.* (citing *Koontz v. Glossa,* 731 F.2d 365, 368 (6th Cir. 1984)); *see also Prather v. Rees,* 822 F.2d 1418 (6th Cir. 1987). A claim will be considered "fairly presented," even without citation to chapter and verse of the Constitution, if the presentation of the claim was "likely to alert the court to the claim's federal nature." *Nadworny v. Fair,* 872 F.2d 1093, 1097 (1st Cir. 1989) (quoting *Daye v. Attorney General of New York,* 696 F.2d 186, 192 (2d Cir. 1982) (en banc)).

A set of four guidelines has been developed for determining whether a claim was presented in such a way as to apprise the state court of the claim's federal nature. *Id.* Under these guidelines, a petitioner may fairly present to the state courts the constitutional nature of his claim by: (1) relying on federal cases employing constitutional analysis; (2) relying on state cases employing constitutional analysis in similar factual contexts; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *Franklin,* 811 F.2d at

23

326 (quoting *Daye,* 696 F.2d at 193-94). The use of a "generalized catch-all phrase," which merely alleges the deprivation of a fair trial under the United States Constitution, does not adequately apprise the state courts of the constitutional nature of the claim where the "only legal theory presented to the state courts was predicated entirely upon state evidentiary law." *Id.* General statements that the petitioner was denied a "fair trial" and "due process" are not sufficient to put state courts on notice of a specific federal constitutional claim in the absence of citation to case law employing federal constitutional analysis. *Petrucelli v. Coombe,* 735 F.2d 684, 688-89 (2d Cir. 1984).

In this case, petitioner failed to fairly present his constitutional claim to the Ohio Court of Appeals or the Ohio Supreme Court. In his briefs petitioner relied exclusively on an Ohio Supreme Court case describing the manifest weight of the evidence standard. (Doc. 5, Ex. 19 at 11; Ex. 24 at 11). There was no mention of the United States Constitution or citation to any case employing constitutional analysis. Accordingly petitioner failed to present his due process claim to the Ohio courts.

Because petitioner committed a procedural default by failing to fairly present this constitutional claim to the Ohio courts he has waived the claim unless he shows cause for the default and actual prejudice as a result of the alleged error, or demonstrates that failure to consider the claim will result in a "fundamental miscarriage of justice." *See Coleman,* 501 U.S. at 750; *see also Murray,* 477 U.S. at 485; *Isaac,* 456 U.S. at 129; *Sykes,* 433 U.S. at 87.

Petitioner has not shown cause or prejudice to excuse his procedural default, nor does the record support a finding that this is an extraordinary case in which a constitutional violation has probably resulted in the conviction of one who is actually innocent of the crime for which he was convicted. *Murray,* 477 U.S. at 496. Petitioner, therefore, has not demonstrated that failure to address the claim will result in a fundamental miscarriage of justice.

Accordingly, petitioner has waived the claim for purposes of habeas corpus review.[5]

---

[5]Assuming, *arguendo*, petitioner had presented an insufficiency of evidence claim under the Due Process Clause to the state courts, petitioner would not be entitled to habeas corpus relief based on the merits of the claim. While his murder case was based on circumstantial evidence, his conviction was supported by sufficient evidence under the standard enunciated in

As his sixth ground for relief, petitioner argues that the Ohio Court of Appeals deprived him of due process and equal protection by failing to apply the mail box rule of *Houston v. Lack*, 487 U.S. 266 (1988) in assessing the timeliness of his Application for Reopening under Ohio App. R. 26 (B). [6]

In *Houston*, the United States Supreme Court determined that the effective date for *pro se* state prisoners filing their notice of appeal in federal habeas corpus proceedings should be the date the notice was delivered to prison authorities for mailing. 487 U.S. at 270. The *Houston* Court reasoned that a pro se petitioner, unlike a counseled inmate, is forced to rely on the prison personnel to mail his materials and his ability to ensure that the document is timely received and to monitor its processing is therefore compromised. *Id.*

The Ohio Court of Appeals denied  petitioner's application for reopening because it was filed seven days late.  (Doc. 5, Ex. 30).  The appellate court rejected petitioner's argument that, pursuant to *Houston*, the application should be considered filed when delivered to prison authorities for mailing.  The court determined that an application for reopening serves as a notice of appeal which under *State ex. re. Tyler v. Alexander*, 555 N.E.2d 966 (Ohio 1990) is considered filed only when received by the court.  In *Tyler*, the Ohio Supreme Court expressly rejected the application of the mailbox rule as contrary to the plain meaning of the pertinent rule of practice. 555 N.E.2d at 967.   The state court also determined that *Houston* arose from an interpretation of the federal rules of appellate procedure and a federal statute, not from any constitutional provision.  555 N.E.2d at 966.

The mailbox rule is not constitutional in nature  and does not stem from due

---

*Jackson v. Virginia,* 443 U.S. 307, 319 (1979).

[6]Ohio R. App. P. 26 (B)(1) provides:

A defendant in a criminal case may apply for reopening of the appeal  from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel.  An application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time.

process concerns, but instead rests on the interpretation of the word "filed" in applicable rules and statutes governing the timeliness of documents and on a notion of fairness. *Longenette v. Krusing,* 322 F.3d 758, 767 (3rd Cir. 2003); *Davies v. McCaughtry,* No. 99-3460, 2000 WL 387147, at **1 (7th Cir. April 14, 2000), *cert. denied,* 531 U.S. 962 (2000);*Goudeau v. Ray,* No. 97-5247, 1998 WL 778718, at **3 (10th Cir. Nov. 9, 1998) *Jenkins v. Burtzloff,* 69 F.3d 460, 461 (10th Cir. 1995); *Nigro v. Sullivan,* 40 F.3d 990, 995 & n.1 (9th Cir. 1994); *Rosario v. Bennett,* No. 01 Civ. 7142(RMB)(AJ), 2002 WL 31852827, at *14 (S.D.N.Y. Dec. 20, 2002); *cf. Vroman v. Brigano,* 346 F.3d 598, 604 (6th Cir. 2003) (for purposes of determining whether federal habeas corpus petition was barred by AEDPA statute of limitations, court declined to apply mailbox rule to determine whether state post-conviction petition was timely filed where mailbox rule was rejected by Ohio Supreme Court). Accordingly, petitioner is not entitled to habeas corpus relief based on his claim that the Ohio Court of Appeals deprived him of due process of law by failing to apply the mail box rule in assessing the timeliness of his Application for Reopening under Ohio App. R. 26 (B).

With regard to petitioner's equal protection argument, the Equal Protection Clause "protects against arbitrary classifications, and requires that similarly situated persons be treated equally." *Richland Bookman, Inc. v. Nichols,* 278 F.3d 570, 574 (6th Cir.), *cert. denied,* 537 U.S. 823 (2002). "Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage" the constitutionality of the law at issue is presumed and "require[s] only that the classification challenged be rationally related to a legitimate state interest." *City of New Orleans v. Dukes,* 427 U.S. 297, 303 (1976). Petitioner argues that by failing to apply the mailbox rule to applications for reopening Ohio has created two classes, federal prisoners entitled to the mailbox rule and state prisoners who are not so entitled. Petitioner's analysis is factually incorrect. *Houston* involved a *state* prisoner appealing the denial of habeas corpus relief by the federal district court. Accordingly, state prisoners also enjoy the benefits of the mailbox rule under these circumstances. Because the Ohio law does not in fact draw the distinction that petitioner alleges, treating federal and state prisoners differently, petitioner's equal protection claim lacks merit.

Petitioner's seventh, eighth, and ninth claims for relief will be considered together, as this Court finds that each is barred from review herein by reason of procedural default/waiver. Those claims assert respectively a Fourth Amendment violation by allowing testimony of Messrs. Rozier and Spikner, constitutional violations (Fifth, Sixth and Fourteenth Amendments) in denying petitioner's motion

26

for a new trial, and a Fourteenth Amendment violation as regards a jury instruction concerning purpose/intent.

Petitioner failed to present any of these claims to the Ohio appellate courts on direct review and has therefore waived them for federal habeas corpus review unless he can demonstrate cause and prejudice or that failure to consider the claims will result in a fundamental miscarriage of justice.

In ground ten of the petition, petitioner alleges that his appellate counsel was constitutionally ineffective for failing to present the claims which parallel numbers seven, eight and nine in this action. Ineffective assistance of appellate counsel may constitute cause for a procedural default, *Murray,* 477 U.S. at 488, unless that claim also has been procedurally defaulted, *Edwards v. Carpenter,* 529 U.S. 446, 452 (2000).

Turning to respondent's argument that petitioner has waived his ineffective assistance of appellate counsel claim due to a procedural default committed in state court, it is well-settled that on federal habeas corpus review the court may be barred from considering an issue if the state judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *Harris v. Reed,* 489 U.S. 255, 260-62 (1989). The "adequate and independent state ground" doctrine has been applied to state decisions refusing to address the merits of a federal claim because of violations of state procedural rules, including the failure to make a timely objection at trial. *Id.* at 261; *Wainwright,* 433 U.S. at 86-87; *see also McBee v. Grant,* 763 F.2d at 813. An adequate and independent finding of procedural default will preclude habeas corpus review of the federal claim, unless the petitioner can satisfy the cause and prejudice standard regarding the alleged violation of federal law or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice. *Coleman,* 501 U.S. at 750; *Harris,* 489 U.S. at 262. A procedural default will not bar consideration of a federal claim on habeas corpus review unless the last state court rendering a judgment in the case "clearly and expressly" states that its judgment rests on a state procedural bar, *Harris,* 489 U.S. at 263, although when the last reasoned state court decision rests both on a procedural default and an alternative ruling on the merits the claim is barred from federal habeas review. *Coleman,* 501 U.S. at 729; *Harris,* 489 U.S. at 264 n.10; *McBee v. Abramajtys,* 929 F.2d 264, 267 (6th Cir. 1991); *McBee v. Grant,* 763 F.2d at 813. In cases where the last state court to render a reasoned opinion on the claim explicitly relies on a procedural bar, the court will presume that a later unexplained order did not silently disregard the procedural default and consider the merits of the claim. *Ylst v.*

*Nunnemaker,* 501 U.S. 797, 803-04 (1991).

The rule precluding federal habeas corpus review of claims rejected by the state courts on state procedural grounds applies only in cases where the state rule relied on by the state courts is deemed adequate or, in other words, involves a "firmly established and regularly followed state practice" at the time that it was applied. *Ford v. Georgia,* 498 U.S. 411, 423-24 (1991); *Warner v. United States,* 975 F.2d 1207, 1213 (6th Cir. 1992), *cert. denied,* 507 U.S. 932 (1993). To be considered regularly followed, a procedural rule need not be applied in every relevant case, but rather "[i]n the vast majority of cases." *Dugger v. Adams,* 489 U.S. 401, 410 n. 6 (1989); *see Byrd v. Collins,* 209 F.3d 486, 521 (6th Cir. 2000), *cert. denied,* 531 U.S. 1082 (2001). Furthermore, adequacy requires application of the rule "evenhandedly to all similar claims." *Hathorn v. Lovorn,* 457 U.S. 255, 263 (1982); *Maes v. Thomas,* 46 F.3d 979, 986 (10th Cir.), *cert. denied,* 514 U.S. 1115 (1995).

Petitioner first presented his ineffective assistance of appellate counsel claim to the state court in his application for reopening pursuant to Rule 26 (B) of the Ohio Rules of Appellate Procedure. (Doc. 5, Ex. 27). The Ohio Court of Appeals, the last court to render a reasoned opinion on petitioner's claim, denied the application because petitioner had failed to show good cause for his untimely filing. (Doc. 5, Ex. 30). The Ohio Court of Appeals, was the last court to render a reasoned opinion on petitioner's claim. The Ohio Supreme Court's later unexplained decision summarily dismissing the appeal "as not involving any substantial constitutional question" must be presumed to rest on the same procedural default. *Taqwiim v. Johnson,* 229 F.3d 1154 (table), No. 99-3425, 2000 WL 1234322, at **3 (6th Cir. Aug. 22, 2000) (unpublished) (citing *Levine v. Torvik,* 986 F.2d 1506, 1517 n.8 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), and *overruled in part on other grounds by Thompson v. Keohane,* 516 U.S. 99 (1995), and *Ylst,* 501 U.S. at 803-04), *cert. denied,* 531 U.S. 1089 (2001).

The state law ground relied on by the Ohio courts in rejecting petitioner's ineffective assistance of appellate counsel claims, turning upon the "good cause" requirement in Rule 26(B), was an adequate basis for decision. In 2001, at the time of petitioner's application to reopen his appeal, it was a well-established, regularly followed practice in Ohio for the courts to foreclose review of untimely ineffective assistance of appellate counsel claims brought in an application to reopen an appeal. *Monzo v. Edwards,* 281 F.3d 568, 577-578 (6th Cir. 2002); *see Knuckles v. Brigano,* 70 Fed.Appx. 830, 841, 2003 WL 21771949, at **11 (6th Cir. July 22, 2003), *cert. denied,* 124 S.Ct. 1046 (2004); *Lewis v. Randle,* 36 Fed.Appx. 817, 819, 2002 WL

847985, at **2 (6th Cir. April 30, 2002), *cert. denied,* 537 U.S. 1137 (2003).

Accordingly, petitioner's ineffective assistance of appellate counsel claim is barred from review by this Court, either as cause for default of his other claims or as an independent claim, absent a showing of cause and prejudice, or that a fundamental miscarriage of justice will result if the claim is not considered.

As cause for his default, petitioner asserts that he presented the materials related to his application for reopening to prison officials for mailing  on January 30, 2001 (Doc. 5, Ex. 29), two days before they were due to be filed, but they were received by the Ohio Court of Appeals seven days late.  Respondent does not take issue with the date petitioner specifies.

To establish cause, petitioner must show that "some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." *Carrier,* 477 U.S. at 488; s*ee Coleman,* 501 U.S. at 753 ("[C]ause" is "something external to the petitioner" which "cannot be fairly attributed to him.")  Reliance on prison officials over whom a prisoner proceeding pro se has no control for mailing legal documents is such an "external factor." *See Maples v. Stegall,* 340 F.3d 433, 438 (6th Cir. 2003) (citing *Mohn v. Bock,* 208 F.Supp.2d 796 (E.D. Mich. 2002)). *But see Luby v. Brady,* No. CIV. A. 95-26-SLR, 1996 WL 328589, at *3 (D. Del. May 16, 1996).  While a petitioner represented by counsel has other options available, such as hand delivery, and the ability to monitor when his documents were received by the court, *Robertson v. Abramajtys,* 144 F. Supp.2d 829, 838-839 (E.D. Mich. 2001) (citing *Houston v. Lack,* 487 U.S. 266, 271 (1988)), a *pro se* petitioner does not have those options and is forced to rely on the prison personnel to mail his materials. *Id.*

Since petitioner was proceeding *pro se* when he presented his application for reopening to the prison authorities for mailing before the filing deadline and his documents were not timely received by the state appellate court, he has established cause to excuse his procedural default based on a late filing. *See Maples,* 2003 WL 21960685, at *5; *Mohn,* 208 F.Supp.2d at 802; *Robertson,* 144 F. Supp.2d at 840.

To excuse a procedural default, petitioner also  has the burden of demonstrating actual prejudice as a result of the alleged constitutional violation, as opposed to prejudice ensuing from the state procedural default. *Maupin v. Smith,* 785 F.2d 136, 139 (6th Cir. 1986) (citing  *United States v. Frady,* 456 U.S. 152, 168, 170 (1982).

29

"[I]n analyzing a petitioner's contention of prejudice, the court should assume that the petitioner has stated a meritorious constitutional claim." *Maupin v. Smith,* 785 F.2d at 139. Since a claim of ineffective assistance of appellate counsel includes a prejudice requirement, any assumption that the claim is meritorious would necessitate a finding of actual prejudice. *Moore v. Carlton,* 74 F.3d 689, 692 (6th Cir.), *cert. denied,* 516 U.S. 1183 (1996); *cf. Phillips v. Mills,* No. 98-5061, 1999 WL 685925, at **4 (6th Cir. Aug. 25, 1999).

Because petitioner has established cause, this Court must now consider the merits of his ineffective assistance of appellate counsel claim, which he has raised as the reason for the procedural default of grounds seven, eight and nine and as an independent claim in ground ten.

To demonstrate that counsel's performance was constitutionally ineffective, petitioner must show: (1) his counsel made such serious errors that he was not functioning as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced the defense by undermining the reliability of the result. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). The Court may dispose of an ineffective assistance of counsel claim by finding that petitioner made an insufficient showing on either ground. *See id.* at 697.

Under the first prong of the *Strickland* test, petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *See id.* at 688. Judicial scrutiny of counsel's performance must be highly deferential, and a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight" and to evaluate the challenged conduct from counsel's perspective at the time of the conduct. *Id.* at 689. In determining whether or not counsel's performance was deficient, the Court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *See id.*

In order to satisfy the "prejudice" prong of the *Strickland* test, petitioner must show that a "reasonable probability" exists that, but for his counsel's errors, the result of the criminal proceedings would have been different. *See id.* at 694. A showing by petitioner that the alleged errors had "some conceivable" effect on the outcome of the proceeding is insufficient to meet this standard. *See id.* at 693. However, by the same token, petitioner need not demonstrate that his counsel's conduct "more likely than not" altered the outcome of the proceeding to establish prejudice. *See id.* Petitioner

30

has met his burden if he shows that the decision reached would "reasonably likely have been different absent the errors." *See id.* at 695.

Tactical choices regarding issues raised on appeal are properly left to the sound professional judgment of counsel. *United States v. Perry,* 908 F.2d 56, 59 (6th Cir.), *cert. denied,* 489 U.S. 1002 (1990). Counsel is not required to raise every nonfrivolous issue on appeal. *See Jones v. Barnes,* 463 U.S. 745, 750-54 (1983). Indeed, the process of "winnowing out" weaker claims and focusing on those arguments more likely to prevail on appeal is considered "the hallmark of effective appellate advocacy" as opposed to evidence of incompetency. *See  Smith v. Murray,* 477 U.S. 527, 536 (1986) (citing *Jones*, 463 U.S. at 751-52).

Petitioner alleges that his appellate counsel was constitutionally ineffective for failing to argue that  the trial court deprived him of his Fourth Amendment right to be free from unreasonable searches and seizures by permitting the testimony of Messrs. Rozier and Spikner concerning their discovery of petitioner and his truck in petitioner's storage bin on the day of the murder.

At trial, Mr. Spikner, an employee of petitioner testified that Mr. Rozier, an FBI agent and cousin of the victim (Doc. 19, Ex. 39, Tr. 449-450), asked him to help him locate petitioner on the day of the murder. ( *Id.,* Tr. 345). The two of them went to petitioner's storage bin.  While Mr. Rozier waited in the car, Mr. Spikner opened the door to the storage area and discovered petitioner's truck. (*Id.*, Tr. 348). Petitioner was lying down on the seat. (*Id.*,Tr. 349).  When he sat up, he had a worried expression on his face. (*Id.*, Tr. 350). The two men switched pagers, and petitioner told Spikner he was going to Chicago or New York. (*Id.*, Tr. 351). After Spikner left, petitioner sped away in his truck. (*Id.*, Tr. 353).

Mr. Rozier also testified that he saw a truck in the storage bin and then saw petitioner sit up on the seat (*Id.*, Tr. 455-456). Rozier testified that he was alarmed by petitioner's expression, describing it as a "very wild look on his face"  and pulled his gun from his waistband.  (*Id.*, Tr. 457-458). Rozier indicated that Spikner and petitioner engaged in a conversation  (*Id.*, Tr. 459), and when Spikner left petitioner sped away (*Id.*, Tr. 460).

The docket sheet of petitioner's second criminal proceeding does not reflect that a pretrial motion to suppress this evidence was filed by petitioner nor does the trial transcript demonstrate that petitioner objected to the evidence at trial. (Doc. 18 at 8;

Doc. 19, Ex. 39, Tr. 466).[7]   Under Ohio Crim. R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."  In order to correct an error without a timely objection, the rule requires that  a reviewing court find that there was error which was plain or obvious and that it affected substantial rights, meaning the outcome of the trial. *State v. Barnes,* 759 N.E.2d 240, 247 (Ohio  2002). While this Court believes that the testimony of Messrs. Rozier and Spikner portrayed petitioner as acting strange, like a guilty man, this evidence was hardly critical in petitioner's conviction.  The eyewitness testimony of petitioner running from the scene, and the discovery of his bloody truck key and cassette in or near the victim's truck was certainly more critical evidence which led to petitioner's  conviction.  In this Court's opinion, had the trial court suppressed the Rozier and Spikner testimony  petitioner would nevertheless have been convicted. Since the alleged error did not affect the outcome of the trial, it did not amount to plain error.

Because the Ohio appellate court would not have determined that failure to suppress the Rozier and Spikner testimony amounted to plain error, appellate counsel did not prejudice petitioner's defense by failing to raise petitioner's Fourth Amendment claim.

As additional error, petitioner cites his appellate counsel's failure to challenge the trial court's denial of his motion for a new trial based on his alleged difficulties with trial counsel.  The trial court ruled on the motion as follows:

> R.C. 2945.79 provides in pertinent part:
>
> "A new trial, after a verdict of conviction, may
> be granted on the application of the defendant
> for any of the following causes affecting
> materially his substantial rights:
> (A) Irregularity in the proceedings of the court, jury,
> prosecuting attorney, or the witnesses for the state, or
> for any order of the court, or abuse of discretion by

---

[7]At trial, petitioner's counsel  stated that he attacked the search pretrial (Doc. 19, Ex. 39, Tr. 465-466), but there is no record of such a motion. This Court ordered respondent to provide the transcript of both the trial and any pre-trial hearings (Doc. 15), and the transcripts submitted did not include a hearing on a motion to suppress the testimony of Spikner or Rozier.

which the defendant was prevented from having a fair trial . . . ."

Defendant has timely filed the motion pursuant to Crim. R. 33. Other than the time limits, for purposes of this motion, the Rule language is substantially the same as the statute.

The matters defendant raises in seeking a new trial essentially are the following:

Lack of communication with counsel, such as he believed the Court would dismiss his case before trial, and counsel failed to pursue a federal remedy when this did not happen.

His attorney had some connection with the deceased's family attorney.

He and counsel had not resolved payment issues.

Mr. Burlew was not authorized to represent him at trial.

Criminal Rule 33(E) prevents a court from granting a motion for a new trial unless it affirmatively appears from the record that the defendant was prejudiced by the particular problem, or it prevented him from having a fair trial. Defendant Smith does not present evidence or raise a sufficient question regarding any showing of an irregularity in the process. Clearly Mr. Burlew was authorized to serve as his counsel. The first time this was raised as an issue was after two jury trials, an interim appeal (on which he prevailed) and a motion to dismiss. That Mr. Burlew and the deceased's family's attorney had a professional relationship is not problematic. While Mr. Smith and Mr. Burlew may have had some issues between them, they do not constitute an "irregularity in the proceedings."

Nor does defendant show that any irregularity or problem raised prevented him from having a fair trial, or

> that any irregularity affected materially his substantial rights
> as R.C. 2945.71 provides, or that he was prejudiced as a
> result, as Crim R. 33 (e) requires.    Mr. Burlew is an
> experienced trial attorney who was intimately familiar with
> the case facts, witness testimony, issues.    He very
> professionally and ably represented Mr. Smith.    That Mr.
> Smith was convicted does not change the nature of Mr.
> Burlew's representation.

(Doc. 5, Ex. 18).  In his petition, petitioner fails to allege any additional facts or present specific legal arguments demonstrating that the Ohio appellate courts would have sustained a claim that the trial court erred in denying petitioner's motion for a new trial. The trial court's ruling is based on the facts of record, and appears to reasonably apply state law.  Accordingly, because there was not a reasonable probability that the outcome of the appeal would have been different had appellate counsel challenged the trial court's ruling, petitioner has not demonstrated that he was prejudiced by counsel's failure to raise the claim.[8]

Petitioner also alleges that appellate counsel was ineffective for failing to challenge the court's jury instruction on intent or purpose as unconstitutionally shifting the burden of proof to the defense.  The judge instructed the jury that:

> [p]urpose to commit a crime, that is, here, to cause the
> death of Eugene Jenkins, is an essential element of the crime
> of murder.    A person acts purposely when he or she
> specifically intends to cause a certain result.  The State must
> prove here that at the time Edward Smith acted, there was
> present in the mind – in his mind, a specific intent to cause
> the death of Eugene Jenkins.

> Purpose is a decision of the mind to do an act, with a
> conscious objective of producing a specific result.  To do an
> act purposely, means to do it intentionally, and not
> accidentally.  Purpose and intent mean the same thing.  The

---

[8]This Court has previously found that there was no constitutional violation attendant upon the denial of continuance, which effectively negates this argument.

purpose with which a person does an act is known only to
him or herself, unless he or she expresses it to others, or
indicates it by his or her own conduct.  The purpose with
which a person does an act is determined from the manner
in which it is done, the means used, and all the other facts
and circumstances in evidence.

> *If a wound is inflicted upon a person with a deadly
> weapon, in a manner calculated to destroy life or inflict
> great bodily harm, you may infer a purpose to cause the
> death from the use of a weapon.*  The presence or absence of
> a motive is one of the circumstances bearing upon purpose.

(Doc. 19, Ex. 39, Tr. 880-881) [emphasis added].   Before this instruction, the Court
also advised the jury that "[t]he defendant must be acquitted unless the State produces
evidence which convinces you beyond a reasonable doubt of every essential element
of the crime charged." (*Id.*, Tr. 873).  The trial judge reiterated that the state had the
burden of proof when she further charged the jury that "[i]n order to find the defendant
guilty of murder, you must find that the State proved beyond a reasonable doubt each
of the following essential elements" and then named purpose as one of those elements.
(*Id.,* Tr. 879-880).  She then emphasized that if the state failed to prove any of the
essential elements of murder, the verdict would be not guilty.  (*Id.*, Tr. 880).

The (italicized) language allowing the jury to infer a purpose when a deadly
weapon is used in a manner calculated to destroy life or inflict great bodily harm is
apparently the instruction to which petitioner now objects.  However, defense counsel
did not lodge an objection to the instruction during trial. His reason for not doing so
may well have been that this same instruction was approved by the Ohio Supreme
Court in *State v. Getsy,* 702 N.E.2d 866 (Ohio 1998), *cert. denied,* 527 U.S. 1042
(1999), holding that it created a permissive presumption by using "may" and was not
the conclusive or burden shifting presumption forbidden by *Sandstrom v. Montana*,
442 U.S. 510 (1979).  *See State v. Evans,* No. 01AP-594, 2001 WL 1653864, at *7
(Ohio Ct. App. Dec. 27, 2001).  Accordingly, appellate counsel would not have been
successful in challenging the jury instruction on appeal, and petitioner was therefore
not prejudiced by his failure to do so.

Because petitioner has not established that appellate counsel's actions in failing
to raise the claims alleged in grounds seven, eight and nine prejudiced his position on

35

appeal, he has not demonstrated that appellate counsel was constitutionally ineffective. This being so, he is not entitled to habeas corpus relief with respect to the ineffective assistance of appellate counsel claim asserted in ground ten of the petition.

From this it necessarily follows that petitioner has failed to establish ineffective assistance of appellate counsel as a basis for excusing the procedural default of grounds seven, eight, and nine. Since the record does not support a finding that this is an extraordinary case in which a constitutional violation has probably resulted in the conviction of one who is actually innocent of the crime for which he was convicted, *Murray,* 477 U.S. at 496, petitioner has not demonstrated that failure to address the claims asserted in grounds seven, eight and nine will result in a fundamental miscarriage of justice. Accordingly, petitioner has waived these claims for purposes of habeas corpus review.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be DENIED with prejudice.

2. Petitioner's motion for a "writ of mandate and writ of mandamus for reopening direct appeal" (Doc. 11) be DENIED as moot.

3. A certificate of appealability should not issue with respect to the dismissal on procedural default grounds of the claims asserted in the petition as grounds five, seven, eight and nine because "jurists of reason would not find it debatable whether this Court is correct in its procedural ruling" as required under the first prong of the two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), which is applicable to procedurally-barred claims.[9] A certificate of appealability also should not issue with respect to petitioner's remaining grounds for relief because petitioner has failed to make a substantial showing of the denial of a constitutional right remediable in this federal habeas corpus proceeding. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). Petitioner has not shown that reasonable jurists could debate

---

[9]Because this Court finds petitioner has not met the first prong of the *Slack* standard, it need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether grounds five, seven, eight and nine state valid constitutional claims. *See Slack,* 529 U.S. at 484.

whether these claims should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 323-324 (2003) (quoting *Slack v. McDaniel,* 529 U.S. 473, 483-84 (2000)) (in turn quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 n.4 (1983)).

4. With respect to any application by petitioner for *in forma pauperis* status for the purposes of pursuing an appeal of an order adopting this report and recommendation, this Court certify that pursuant to 28 U.S.C. § 1915 (a) an appeal of this order would not be taken in "good faith," and, therefore, DENY petitioner leave to proceed on appeal *in forma pauperis*. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date:  April 27, 2004         S/David S. Perelman
        hr                    David S. Perelman
                              United States Magistrate Judge

J:\ROSENBEH\2254(2004)\01-814cont&id&dj.wpd

37

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

———————————————

Edward Smith,
        Petitioner


        vs                              Case No. 1:01cv814
                                        (Dlott, J.; Perelman, M.J

Anthony Brigano,
        Respondent

———————————————

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable David S. Perelman, United States Magistrate Judge, in the above-entitled action.  Pursuant to Fed. R. Civ. P. 72(b), any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof.   Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s).  Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections.  *See* Fed. R. Civ. P. 72(b).  A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal.  *See Thomas v. Arn,* 474  U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

38