IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

EDWARD SMITH,                           :
                                        :
        Petitioner                      :
                                        :       Case Number: 1:01cv814-SJD
    vs.                                 :
                                        :       District Judge Susan J. Dlott
ANTHONY BRIGANO, Warden                 :
                                        :
        Respondent                      :

ORDER

This matter is before the Court pursuant to the Order of General Reference in the United

States District Court for the Southern District of Ohio Western Division to United States

Magistrate Judge David S. Perelman. Pursuant to such reference, the Magistrate Judge reviewed

the pleadings and filed with this Court on April 27, 2004 Report and Recommendations (Doc.

20).  Subsequently, the petitioner filed objections to such Report and Recommendations.

The Court has reviewed the comprehensive findings of the Magistrate Judge and

considered de novo all of the filings in this matter. Upon consideration of the foregoing, the

Court does determine that such Recommendations should be adopted.

IT IS ORDERED THAT petitioner's petition for writ of habeas corpus pursuant to 28

U.S.C. Sec 2254 is hereby DENIED with prejudice. The petitioner's motion for a writ of

mandate and writ of mandamus for reopening direct appeal (Doc. 11) is hereby DENIED as

moot.

With respect to any application by petitioner to proceed on appeal *in forma pauperis*, the

Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of this order would not be taken

in "good faith" and therefore DENIES petitioner leave to appeal *in forma pauperis. See* Fed. R.

App. P. 24(a); *Kincade v Sparkman*, 117 F.3d 949, 952 (6th Cir. 1997).

A certificate of appealability shall not issue with respect to the dismissal on procedural default grounds of the claims asserted in the petition as grounds five, seven, eight and nine because jurists of reason would not find it debatable whether this Court is correct in its procedural ruling as required under the first prong of the two-part standard enunciated in *Slack v McDaniel*, 529 U.S. 473, 484-85 (2000), which is applicable to procedurally-barred claims. A certificate of appealability shall not issue with respect to petitioner's remaining grounds for relief because petitioner has failed to make a substantial showing of the denial of a constitutional right remediable in this federal habeas corpus proceeding. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). Petitioner has not shown that reasonable jurists could debate whether these claims should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 323-24 (2003)(quoting *Slack v McDaniel* 529 U.S. 473, 483-84 (2000))(in turn quoting *Barefoot v Estelle*, 463 U.S. 880, 893 n. 4(1983)).

IT IS SO ORDERED.

          s/Susan J. Dlott
Susan J. Dlott
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

EDWARD SMITH,                            :
                                         :
            Plaintiff(s)                 :
                                         :    Case Number: 1:01cv814-SJD
    vs.                                  :
                                         :    District Judge Susan J. Dlott
ANTHONY BRIGANO, Warden                  :
                                         :
            Defendant(s)                 :

JUDGMENT IN A CIVIL CASE

        Decision by Court: This action came to trial or hearing before the Court. The issues have
been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED

. . . that petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. Sec 2254 is hereby DENIED with
prejudice. The petitioner's motion for a writ of mandate and writ of mandamus for reopening direct appeal (Doc. 11)
is hereby DENIED as moot.

. . . that with respect to any application by petitioner to proceed on appeal *in forma pauperis*, the Court certifies
pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of this order would not be taken in "good faith" and therefore
DENIES petitioner leave to appeal *in forma pauperis*. *See* Fed. R. App. P. 24(a); *Kincade v Sparkman*, 117 F.3d
949, 952 (6th Cir. 1997).

. . . that a certificate of appealability shall not issue with respect to the dismissal on procedural default grounds of the
claims asserted in the petition as grounds five, seven, eight and nine because jurists of reason would not find it
debatable whether this Court is correct in its procedural ruling as required under the first prong of the two-part
standard enunciated in *Slack v McDaniel*, 529 U.S. 473, 484-85 (2000), which is applicable to procedurally-barred
claims. A certificate of appealability shall not issue with respect to petitioner's remaining grounds for relief because
petitioner has failed to make a substantial showing of the denial of a constitutional right remediable in this federal
habeas corpus proceeding. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). Petitioner has not shown that reasonable
jurists could debate whether these claims should have been resolved in a different manner or that the issues
presented were "adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 323-24
(2003)(quoting *Slack v McDaniel* 529 U.S. 473, 483-84 (2000))(in turn quoting *Barefoot v Estelle*, 463 U.S. 880,
893 n. 4(1983)).

9/2/04                                          JAMES BONINI, CLERK


                                               ___s/Stephen Snyder_____
                                               Deputy Clerk



ENTERED
OCT. 16 1998
IMAGE 2

# IN THE COURT OF APPEALS
## FIRST APPELLATE DISTRICT OF OHIO
## HAMILTON COUNTY, OHIO

STATE OF OHIO,                           :          APPEAL NO. C-970349
                                                    TRIAL NO. B-9609928
    Plaintiff-Appellee,              :
                                                    JUDGMENT ENTRY
    Vs.                              :

EDWARD SMITH,                            :

    Defendant-Appellant.             :

       This cause having been heard upon the appeal, the record and briefs filed herein and arguments, and

       Upon consideration thereof, this Court Orders that the judgment of the trial court is reversed and the cause remanded for the reasons set forth in the Opinion filed herein and made a part hereof.

       Further, the Court holds that there were reasonable grounds for this appeal, allows no penalty and Orders that costs are to be taxed in compliance with App. R. 24.

       The Court further Orders that 1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and 2) the mandate be sent to the trial court for execution pursuant to App. R. 27.

**To The Clerk:**

Enter upon the Journal of the Court on ___10/16/98___ per Order of the Court.

By: _____

      **Presiding Judge**

DOC.15 Exhibit 9

# The Supreme Court of Ohio

89-184

FILED

MAR 03 1999

M. MENGEL, CLERK
COURT OF OHIO

1999 TERM

State of Ohio,                    :
          Appellant,              :          Case No.  98-2517

          v.                      :             E N T R Y

Edward Smith,                     :
          Appellee.               :

          Upon consideration of the jurisdictional memoranda filed
in this case, the Court denies leave to appeal and dismisses
the appeal as not involving any substantial constitutional
question.

COSTS:

  . Docket Fee, $40.00, paid by Joseph T. Deters.

          (Hamilton County Court of Appeals;  No. C970349)

THOMAS J. MOYER
Chief Justice

Doc.15

EXHIBIT

12

0014r030399

After being indicted for the murder of Jenkins, Smith moved to suppress the photo identification and in-court identification of Thomas, arguing that the photo array was unduly suggestive. The trial court denied this motion. Following a jury trial, Smith was found guilty of murder with a gun specification. The trial court sentenced him to serve fifteen years to life, plus three years' actual incarceration on the gun specification. Smith then moved for a new trial and for a judgment of acquittal under Cirm.R. 29(A); these motions were also denied.

On appeal, Smith brings seven assignments of error. Because we sustain Smith's first and second assignments of error, we reverse the trial court's judgment.

## II.  FIRST AND SECOND ASSIGNMENTS

In his first and second assignments of error, Smith argues that the trial court erred in overruling his motions for mistrial and a new trial because the prosecuting attorneys, by their misconduct during closing argument, violated his constitutional rights by depriving him of a fair trial.

Generally, the conduct of a prosecuting attorney cannot be made a ground of error unless the conduct deprived the defendant of a fair trial.[1] Under Ohio law, the test for whether prosecutorial misconduct may serve as the basis for reversing a conviction is first whether the prosecutor's remarks were improper, and, if so, whether they prejudicially affected substantial rights of the accused.[2] Smith complains of four

---

[1] *State v. Maurer* (1984), 15 Ohio St.3d 239, 266, 473 N.E.2d 768, 793, certiorari denied (1985), 472 U.S. 1012, 105 S.Ct. 2714.
[2] *State v. Lott* (1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293, 300, certiorari denied (1990), 498 U.S. 1017, 111 S.Ct. 591; *State v. Hart* (1994), 94 Ohio App.3d 665, 671, 641 N.E.2d 755, 759, discretionary appeal denied (1994), 70 Ohio St.3d 1446, 639 N.E.2d 114.

Doc. 15 Exh. 9

OHIO FIRST DISTRICT COURT OF APPEALS

instances of misconduct, all of which occurred during closing argument. We examine each of these alleged instances in turn,[3] keeping in mind that despicable behavior and terrible crimes do not preclude the duty to zealously protect the substantial constitutional rights of those accused of such offenses. We observe that the senselessness, cruelty, and abhorrence of crimes periodically incenses even experienced and capable prosecutors beyond constitutional and professional control. While this is understandable, it should not be permitted to denigrate the cherished constitutional requirement of fair trial. We take no pleasure in applying the standard in such cases, and do so not as zealots, but pursuant to our sworn duty to uphold constitutional protections.

### A. ALIBI COMMENT

Smith takes issue with the prosecutor's comment during closing argument regarding his lack of an alibi:

> Let's think about what you have heard in this case and the evidence that you have heard. And I have a list *** first of all, we have a lady who made a very good identification. ***

> But what happens then, the police start to investigate, and they find another man who happens to have seen a person who looked like this person with the victim minutes before the victim was killed. The odds go up a little bit, don't they? Get a little better. ***

> And then we have item number three. Mr. White says Mr. Jenkins wouldn't pick anybody up in the truck unless it was about business, a business partner, businessman, business. Odds go up a little bit more.

> Then the witness, and this is pretty important, because *the witness has picked somebody who doesn't have an alibi.* [Emphasis added.]

---

[3] While we have reviewed these alleged instances of prosecutorial misconduct in the context of the entire case, for convenience we present our analysis of each of these instances separately.

6

OHIO FIRST DISTRICT COURT OF APPEALS

Defense counsel immediately objected to this comment; the objection was sustained by the trial court. At sidebar, defense counsel moved for a mistrial, arguing that the prosecutor had improperly commented on Smith's failure to testify and had improperly shifted the burden of proof. The trial court denied defense counsel's motion for a mistrial and then brought the jury back without giving any curative instruction.

Initially, we must determine whether the remark in question was, in fact, a comment adversely directed to Smith's decision not to testify. Such comments are, of course, prohibited by the Fifth Amendment.[4] The answer to this question, under the facts of this case, is that the prosecutor's alibi comment *was* adversely directed to Smith's decision not to testify. This conclusion is required because the prosecutor knew that Smith had told the police that he could not corroborate an alibi and also knew that Smith had not filed a notice of alibi, and thus had nothing to offer as testimony in his defense against apparent evidence of his guilt. The state argues that the comment was meant to say that the state's evidence was strong, but that is not what was said. The prosecutor said that "somebody", i.e., the defendant Smith, "doesn't have an alibi." The law derives intention from the results of words or actions. It is natural to conclude that the intention of such language is to underscore Smith's failure to testify and his silence as to an alibi. A reasonable juror could conclude that if Smith had an alibi he would not remain silent. The words spoken have a plain meaning, and we cannot speculate that they were intended to mean something not said.

---

[4] *Griffin v. California* (1965), 380 U.S. 609, 85 S.Ct. 1229; *State v. Clark* (1991), 74 Ohio App.3d 151, 156, 598 N.E.2d 740, 743.

## OHIO FIRST COURT OF APPEALS

We further determine that the alibi comment may very well have created the belief in the minds of the jury that the defense had a burden of proof on the matter of alibi, particularly with no curative instructive from the trial judge.

### B. DENIGRATION OF DEFENSE COUNSEL

The second instance of prosecutorial misconduct of which Smith complains relates to the prosecutor's denigration of defense counsel. The following comments were made by the prosecutor during closing argument:

> Mr. Burlew is a very nice man. He's one of the best criminal lawyers in Cincinnati. And I say that and I mean it, and I respect him greatly. *And he's really, really good at making, and maybe you've heard the term before, chicken salad out of chicken -- fill in the blank.* Maybe you've heard it before. Maybe you haven't. And he's done a superb job at doing that. Okay?

> And I can't emphasize to you enough, because he got up here at closing argument and he was arguing that I was going to attack him, and we're going to attack the lawyer because we don't have any evidence, so on and so forth; and I apologize to him ahead of time because I am going to attack him. I have to. He's put me in the position where I can do nothing else, *because he has tried the whole case not by evidence, but by his speeches and misrepresentations.* [Emphasis added.]

The following then took place in the jury's presence: defense counsel immediately stated to the trial court, "I demand an apology *** [a]nd I demand a reprimand from you to this jury certifying to them that I have violated no canon, none of your admonitions in this case;" the trial court suggested that an apology was appropriate; the apology was made by the prosecutor; it was accepted by defense counsel; and the trial court then admonished the prosecutor, stating that "we're going to turn our attention to the evidence in this case and not upon personal nature of counsels; we are, aren't we?"

8

OHIO FIRST DISTRICT COURT OF APPEALS

As this court stated in *State v. Hart,*[5] our adversarial system permits and even encourages prosecutors to argue fervently for conviction. Accordingly, courts have consistently recognized that the prosecution is entitled to a wide degree of latitude and freedom of expression during summation in discussing what the evidence has shown and what reasonable inferences may be drawn therefrom.[6] Thus, the prosecutor was clearly entitled in this case to comment on the testimony and to suggest the conclusions to be drawn from it.[7] He was also free to highlight the relative strength of the prosecution's case and relative weakness of the defense.

The latitude afforded the prosecution does not, however, extend so far as to permit the prosecution to denigrate the role of defense counsel.[8] The prosecutor's comments in this case, in effect, suggested to the jury that defense counsel had intentionally deceived the jury by engaging in misrepresentations. As we stated in *Hart*:

> [a] prosecutor may argue and argue ardently that the evidence does not support the conclusion postulated by defense counsel. A prosecutor may not, however, denigrate the role of defense counsel by injecting his personal frustration with defense tactics ***. *** The prosecutor was not entitled to employ *** argument to denigrate the role of defense counsel and to insinuate to the jury that [the defendant] and his counsel, by exercising their right to suggest what conclusions may or may not have been drawn from the evidence found at trial, were seeking to hide the truth.[9]

We cannot subscribe to the state's argued exculpation of such conduct. Rather, we agree with defense counsel that this personal attack was completely baseless and improper, and

---

[5] 94 Ohio App.3d at 671, 641 N.E.2d at 759.
[6] *Id.,* citing *State v. Stephens* (1970), 24 Ohio St.2d 76, 82, 263 N.E.2d 773, 777.
[7] *Maurer,* supra.
[8] *Hart,* supra; *State v. Keenan* (1993), 66 Ohio St.3d 402, 406, 613 N.E.2d 203, 207.
[9] 94 Ohio App.3d at 673-674, 641 N.E.2d 755, 760.

OHIO FIRST DISTRICT COURT OF APPEALS

constituted error. Furthermore, it had the dangerous potential of tainting the jury's view of Smith's defense.

Aside from the crude analogy pertaining to the ingredients of chicken salad, which was inappropriate to the dignity of trial, we are intuitively and legally repulsed by the prosecutor's purposeful attack statement that defense counsel personally tried the case by misrepresentations. The quotation from *State v. Hart, supra*, applies to the matter *sub judice* like a poured mold; this admitted personal attack was completely improper and rises to the level of constitutional error. Further, under the facts of this case, we cannot remove prejudice to a fair trial by a court-extracted apology, the appearance of apparent evidence of guilt, and a court instruction that statements made by counsel are not evidence. Nor can we subscribe to the argument that the trial court tacitly acknowledged that there was no misconduct. Why would defense counsel and the trial judge demand an apology, but for misconduct? The effect on the jury of this personal denigrating attack by the prosecution upon defense counsel, alleging misrepresentations, was akin to invasive radioactive fallout that could not be totally eradicated.

## C. BAD CHARACTER

Third, Smith contends that he was prejudiced by the following statement made by the prosecutor during closing argument:

> You heard it all. The guy she picks, all of a sudden being desperate for money, decides to take his car to Kentucky and abandon it. Why did he do that? He wants to leave the car in Kentucky, he needs cash, he leaves the car in Kentucky. And then the same guy that she picks tries to sell it for 500 bucks to Ferguson.
>
> ***
>
> So one minute he's a local long-time businessman, and then the next minute the guy that she sees, he's going to leave town, is trying to get some quick cash, he's trying to get three grand above

10